1836.

Bradley
v.
Root.

Where the holder of a mail contract assigned the same to the complainant, who agreed to carry the mail during the continuance of the contract, and was to receive therefor all the monies which should become payable under the contract, according to the terms thereof; and the assignor afterwards gave R. an order upon the postmaster general, for the monies which might become payable upon the contract, to indemnify R. and S. against a responsibility which they had previously incurred as his endorsers; *Held*, that the complainant, by the assignment of the mail contract, had a specific equitable lien upon the monies which were to be received for carrying the mail under the contract; and that having the prior as well as the superior equitable right to such monies, R. was bound to pay over to him the amount which had been received from the postmaster general upon such order.

An order to pay a debt out of a particular fund belonging to the debtor, is an equitable assignment of the fund pro tanto, and gives the creditor who receives the order a specific equitable lien upon such fund.

If a complainant examines a defendant, who is primarily liable for the payment of the demand for which the suit is brought, as a witness against a co-defendant who is only secondarily liable, he cannot have a decree against either of those defendants, upon that part of the case to which he examined one of them as a witness.

The rule that a complainant cannot have a decree against a defendant whom he has examined as a witness in the cause, does not apply to the case of a mere formal defendant, as an executor or trustee, against whom no personal decree is sought, and who has no personal interest in the question as to which he is examined as a witness against his co-defendants; nor to the case of a defendant who by his answer admits his own liability, or who suffers the bill to be taken as confessed against him.

Where a defendant admits that he is primarily liable to the complainant for the payment of the demand for which the suit is brought, he may be examined, either by the complainant or by his co-defendants, as a witness in the cause.

Where the complainant examined a witness against the original defendants in the cause, and it appeared upon such examination that the witness was primarily liable for the payment of part of the claim for which the suit was brought, and he was thereupon made a defendant, by a supplemental bill, and suffered such bill to be taken as confessed against him ; *Held*, that the complainant was not precluded from having a decree against the defendant who had thus been examined as a witness before he was a party to the suit.

*1836.*

Bradley
v.
Root.

THIS was an appeal from a decree of the vice chancellor of the third circuit. The complainant stated in his bill that Sylvester Stewart, one of the defendants, in the fall of 1820, obtained from the postmaster general three separate and distinct contracts for carrying the mail on different routes, for four years from the 1st of January, 1821 ; the last of which contracts, under which the complainant claimed the right to relief in this suit, was for carrying the mail from Stamford, or the head of the Delaware, by Harpersfield, Kortright, &c. to Oxford and back, once a week, at the rate of $75 per quarter, the other contracts having been assigned or given up previous to March, 1822 ; that on the 21st of January, 1821, the contract for carrying the mail from Stamford to Oxford and back, and all the interest of Stewart therein, was assigned by him to the complainant, who agreed to carry the mail according to the contract, and was to receive all the monies due and payable on the same ; but no notice of such assignment was given to the postmaster general ; that the complainant carried the mail, under the contract, up to the 20th of May, 1823, and received the stipulated compensation to the first of January, 1822, except $30 which was received in a draft on a country post master, and not being paid, the draft was returned to the general post office ; and that there was due to the complainant for his services under the contract, on the first of May, 1823, $400, exclusive of the draft returned ; that the complainant was ignorant of the regulation of the department requiring notice of the assignment of a contract to be given to the department to entitle the assignee to receive payment in his own

March 15.

name; and that the defendant, Root, about the last of March, 1822, knowing or having reason to believe or suspect that the contract had been assigned to the complainant, or the equitable right thereto transferred to him, fraudulently and collusively, and without the complainant's knowledge, procured an order from Stewart upon the postmaster general for the payment of $625 on his mail contracts, payable from time to time as the payments should become due, Stewart then being notoriously insolvent; under which order the defendant Root had received in payments from the postmaster general, from time to time, $430, which belonged to the complainant under the assigned contract. By the answer of the defendant, S. Stewart, the allegations in the bill were admitted, except that he denied that he had any intention of defrauding the complainant. General Root, by his answer, admitted the receipt of the order, and that S. Stewart was then insolvent; and that he had received from the postmaster general $395, on the order, including $60 in drafts, on postmasters, which had not been paid at the time of putting in the answer. He also alleged in his answer, that the draft upon the post office department was given to him by S. Stewart, to indemnify him and John Stewart for responsibilities incurred before that time, as his endorsers, and to secure the payment of debts due to the defendant Root, individually. And he denied that the draft was received with the view or design of preventing the complainant from receiving the avails of the contract, or with a view to injure or defraud him. Proofs were afterwards taken in the cause, and the complainant proved the assignment of the contract, and the carrying of the mail by himself, as alleged in the bill. John Stewart was examined as a witness on the part of the complainant, but the defendant, Root, having made the objection that he was a necessary party, as the order on the postmaster general was given for the benefit of himself and J. Stewart jointly, J. Stewart, under an order of the court, was afterwards made a party defendant, by a supplemental bill; which bill was taken as confessed against him.

Upon the hearing of the cause the vice chancellor, decreed the payment of the $395, received by Root, and the

interest thereon from the first of July, 1823, with costs. And a further provision was made, in the decree, for the settlement of the equities between the several defendants, and to compel an equitable contribution. From this decree the defendant, Root, appealed to the chancellor.

*B. F. Butler & E. Root*, for the appellant. There is no proof of such an assignment of the mail contract to the complainant. as is set forth in the bill; nor is it shown that the complainant had any right to resort to any person except S. Stewart, for the monies due him on the covenant of Stewart. Whatever may have been the right of Bradley as between him and S. Stewart, the defendant Root had no such notice as to invalidate the order executed to him. The notice proved was at most, a notice that Bradley was a sub-contractor, and was entitled to $75 out of every $200. The order should therefore be sustained to the extent of the monies then due on the note to Day.

The only equitable claim which can be set up by the complainant against the defendant Root separately from John Stewart, is for the $75 out of every $200 mentioned in the exhibits D. and E. ; and for this he cannot have a decree in this suit, because it is properly recoverable at law, and is utterly repugnant to the whole scope of the bill, and the relief prayed by it. But if any decree in favor of the complainant is made in this cause, the defendant Root should be allowed the payment to Day of $105 ; and he should in no event be charged with costs. The costs, if allowed to the complainant, should be charged on the defendant John Stewart, whose conduct throughout the whole matter has not only been disingenuous, but fraudulent, both towards the complainant and his co-surety, Root. As between the defendants themselves, the defendant Root is entitled to be indemnified against the notes to Day, and also for his private account; provided the balance in the hands of John Stewart are sufficient, together with what will remain in the hands of Root, after allowing his private account, to satisfy complainant's demand, which is evidently the case.

*S. Sherwood*, for the respondent. The defendants Root and J. Stewart, with full knowledge that the mail contract

from Stamford to Oxford had been assigned to the complainant, received $395 belonging to the complainant. Root should therefore be decreed to refund the same with interest; and the vice chancellor's decree is correct in this respect. The money being inequitably obtained, no part of it ought to be retained, either to pay the notes endorsed by Root and John Stewart, or Root's private demand, if he has any.

The decree being against Root and S. Stewart only, and John Stewart being made a party after he was examined as a witness, at which time he was competent, the decree is not objectionable on that ground; even if that question had been raised below.

THE CHANCELLOR. Before I proceed to examine the merits of this case, it is proper that I should notice one or two formal objections to the complainant's right to recover in this suit, which were made on the hearing. If the complainant had a perfect remedy at law to recover the money due to him on the contract, and which was received by the defendant Root, it is too late to make that objection at this time, as it was not insisted on in the defendants' answer; and it has frequently been decided by this court that it is too late to make such an objection for the first time at the hearing.

It is insisted on the part of the appellant that the defendant J. Stewart was primarily liable to the complainant for the money received of the postmaster general and paid over to Day, in discharge of the joint liability of Root and himself, and that the complainant, by examining him as a witness against Root, has precluded himself from having a decree against either. The rule is unquestionably as contended for by the appellant's counsel, that if the complainant examines a defendant who is primarily liable, as a witness against his co-defendant who is only secondarily liable, he is not only precluded from having a decree against the witness, upon the part of the case to which he has examined him, but is also prevented thereby from obtaining a decree against the co-defendant who is only secondarily liable. (*Goold* v. *O'Keefe*, *Beatty's Ch. Rep.* 356. *Thompson* v. *Harrison*, 1 *Cox's Ca.* 344.) In this case the supplemental bill has been taken as

1836.

Bradley
v.
Root.

confessed, as against the defendant John Stewart. And as it is substantially charged in that bill that he had, from the bond and mortgage, received more than was sufficient to pay the whole debt of Day for which Stewart and Root were jointly liable as endorsers, if Root is obliged to pay to the complainant the money received of the postmaster general, he will be entitled to a decree over against J. Stewart for so much of the money as was applied in payment of their joint indebtedness to Day, with interest from the time it was so paid.

This case, however, does not come within the principle of the rule to which I have adverted. The reason of the rule that the complainant cannot have an adverse decree against a defendant as to a part of the case to which he has examined him as a witness, is, that it would be charging him upon his own evidence, which can only be obtained against himself by proper charges in the bill, and by calling upon him to answer, in the usual way. (*See Palmer* v. *Van Doren*, 2 *Edw. Ch. Rep.* 192.) Neither does the rule extend to the case of a mere formal defendant, as an executor, or trustee, against whom no personal decree is sought, and who has therefore no personal interest in the question as to which he is examined as a witness against his co-defendants. In the case of *Carter* v. *Hawley*, (*Blunt's Ambler*, 583, *n.* 3,) Lord Hardwicke, in reference to this point, says : " The rule of this court differs from that of law, because there are several cases where the complainant must make parties of those defendants whom he must necessarily examine as witnesses, as in the case of trustees, whom he must examine, and notwithstanding pray a decree against them ; for though they may have the legal estate in them, they are not materially interested." The principle of the rule that the complainant cannot have an adverse decree against a defendant whom he has examined as a witness, does not appear to extend to the case of a defendant who by his answer admits his own liability, or who admits the same by suffering the bill to be taken as confessed. I infer that such was the case in *Carter* v. *Hawley*, as Lord Hardwicke permitted the deposition of a defendant to be read against his co-defendants, upon a bill for the specific performance of articles of agreement for the granting a lease, although he

declared that the defendant who was thus examined was a necessary party to the suit. In *Massy* v. *Massy*, (*Beatty's Ch. Rep. 353*,) where the complainant had examined the principal defendant as a witness against his co-defendants either through carelessness or ignorance although the complainant's case was sufficiently admitted by the answers of all the defendants, Lord Chancellor Hart refused to dismiss the bill and turn the complainant around to a new suit, but directed the objectionable deposition to be expunged at the expense of the complainant. And in *Lupton* v. *Lupton*, (2 *John. Ch. Rep.* 614,) Chancellor Kent decided that a defendant who had suffered the bill to be taken as confessed against him, and thereby admitted that he was primarily liable for the payment of the legacy which was sought to be recovered against him and the other defendants, was a competent witness for his co-defendants, although there must be a personal decree against him in the first instance. In this court mere technical objections to the admissibility of evidence, on the ground that the witness is a party to the suit, are wholly discountenanced; although the complainant who has a right to call for an answer on oath from a defendant, as to every material fact in the cause, cannot be permitted to examine such defendant as a witness for the purpose of obtaining an adverse decree against himself. But where it appears from the answer of a defendant, or from his having suffered the bill to be taken as confessed, that he is primarily liable to the complainant, so that he stands indifferent as between other parties to the suit, and cannot possibly be either benefitted or injured by any testimony he may give in the cause, I can see no good reason why the right to examine him as a witness, on the part of the complainant as well as on the part of a co-defendant, should not be mutual. And such I think was the opinion of Lord Hardwicke, from his language in the case of *Dixon* v. *Parker*, (2 *Ves. sen.* 222,) who, after adverting to the difference between the rules of courts of law and the court of chancery in this respect, lays down the rule of evidence in the court of chancery thus : " Where there is a defendant in this court, if, notwithstanding that he is not concerned in interest, either side may examine him as a witness ; and, therefore, the com-

plainant, although he has made a person defendant whom he wants to examine as a witness, may, on suggestion that he is not concerned in interest, obtain an order for it, saving just exceptions; and so may a co-defendant."

Again; there are other reasons in the present case why the rule insisted on by the defendants' counsel should not be applied here, for the purpose of depriving the complainant of his relief and turning him around to a new suit. When J. Stewart was examined as a witness against the defendants in the original bill, he was not a party to the suit, neither did it appear from the bill that he was in any way interested in the matters as to which relief was sought against the then defendants. The defendant Root, however, in his answer, alleged that the order upon the postmaster general, upon which the money claimed by the complainant was obtained, was given for the joint benefit of himself and J. Stewart, the witness, to secure them as endorsers of S. Stewart, upon the notes to Day, and that a part of the money thus received had been applied to the payment of those notes; and it also appeared, from the testimony in the cause, that J. Stewart had received a bond and mortgage from the principal debtor, as a counter security, upon which he had realized sufficient to pay the whole debt to Day, for which he and Root were jointly liable as sureties of S. Stewart. Under these circumstances, and after the proofs in the cause were closed, a supplemental bill was filed against J. Stewart only, under the direction of the court, for the purpose of making him a party, and to enable Root to obtain a decree over against him if the complainant should succeed in the suit. As Stewart suffered this supplemental bill to be taken as confessed, no evidence could be taken in the supplemental suit. He has not been examined as a witness since he was made a party; but at the hearing, his deposition which had been taken in the original suit was read by the complainant's counsel against Root and S. Stewart, the defendants in that suit. If there was any legal objection to the admissibility of this deposition under these circumstances, which at present I cannot discover, that may be a good reason for suppressing that part of the testimony; but

it certainly affords no just ground for dismissing either the original or the supplemental bill.

The conclusion at which I have arrived upon another part of this case, renders it perfectly immaterial whether the deposition of J. Stewart is received or rejected. Independent of that deposition, the answer of the defendant Root and the written and oral testimony in the cause, show that he had sufficient to put him upon inquiry as to the complainants equitable rights, either as assignee of the mail contract, or as a sub-contractor under S. Stewart; even if Root and J. Stewart, for whose benefit the order was obtained, were in a situation to protect themselves as bona fide assignees of the money which was to become due under the mail contract with the postmaster general. But as the order was obtained merely as a security, to be collected and applied in payment of a debt for which they were previously liable, and no additional responsibility was assumed or other security given up on the faith of that order, the prior equity of the complainant, if he had any, must prevail, whether Root or J. Stewart had or had not notice of such prior equity at the time the order was given, or subsequently thereto. The vice chancellor was, therefore, wrong in supposing that Root could defend himself on the ground that he was a bona fide assignee for a valuable consideration paid, even if every allegation in his answer is to be taken as true. Besides, the order itself was nothing more than an equitable assignment of the money to become due on the contract. And if there had been a previous equitable assignment to the complainant, who it appears has actually earned the money by carrying the mail, he has not only the prior but also the stronger and better equity to claim the assigned fund; either of which is sufficient to authorize him to claim the money in the hands of the defendant Root, who paid no new consideration for his subsequent equity. It is only necessary, therefore, for me to inquire whether the complainant had such a prior equitable assignment of the fund.

It is insisted on the part of the defendants that the instrument, executed by the complainant and S. Stewart, is not an assignment of the mail contract, but is merely a sub-contract. It is not alleged in the bill, that the mail contract was assign-

ed by Stewart, in the manner required by the regulations of the post office department to entitle the assignee to claim compensation in his own name. On the contrary, it is alleged in the bill, that the complainant was altogether ignorant of the regulation making it necessary for the assignee to give notice of the assignment to the department. He, therefore, claims to be entitled to the fund, under an equitable assignment merely, and if he has proved such an assignment, it is all that could be required of him, under the allegations in the bill. The agreement, in this case, recites the original mail contract, and that S. Stewart has *assigned* his interest therein to the complainant, and then concludes thus : " Now, therefore, it is agreed between the said Burr Bradley and the said Sylvester Stewart, that the said Burr will well and faithfully carry the said mail, agreeably to the terms of the said contract first mentioned, and that the said Burr shall, for doing the same, receive the full benefit of said contract, and be entitled to all monies due from the postmaster general, agreeably to the terms of said contract for carrying said mail ; and that the said Sylvester will deliver and pay over to the said Burr all monies or drafts received by said Sylvester, by virtue of said mail contract." This, in equity, is clearly an assignment of the contract, and of the specific fund which was to become payable from the postmaster general under the same. In *Yates* v. *Groves*, (1 *Ves. jun.* 280,) Lord Thurlow decided that an order to pay a debt out of a particular fund belonging to the debtor, constituted an equitable assignment of the fund *pro tanto*, and gave to the creditor a specific equitable lien thereon, although the order had not been accepted by the holders of the fund before the debtor's bankruptcy. (*See also* 1 *Mad. Rep.* 55 ; 4 *Sim.* 607 ; 1 *Russ. & Myl.* 602 ; *and* 3 *Dea. & Chit. Rep.* 218.) Here, by the very terms of the agreement, the mail contract is declared to be assigned to the complainant, and it is also declared that he shall receive the full benefit of the contract, and be entitled to all monies to become due for carrying the mail under the same. It seems to be impossible to make use of language more clear and explicit, to show the intention of the parties to give the assignee a

specific equitable lien upon this particular fund. The subse-
quent covenant on the part of S. Stewart, to deliver and pay
over to Bradley the monies and drafts received by virtue of
the mail contract, is strictly in accordance with this view of
the case, and would give the assignee the right to follow
such monies and drafts into the hands of any persons, except
bona fide receivers or purchasers for a full consideration paid
upon the faith of such monies or drafts, so long as the par-
ticular fund could be traced and identified.

The defendants Root and S. Stewart have not, in their an-
swers, insisted, as a defence, that the postmaster general elect-
ed to consider the contract forfeited, in consequence of any ir-
regularity in carrying the mail under the same, or that S.
Stewart sustained any damage by reason of the complainant's
neglect to comply with the literal requirements of the con-
tract; but, on the contrary, it appears that the contract was
considered in full force, and that the money received by Root
was paid under the same. The whole of the evidence, there-
fore, as to any irregularity in carrying the mail, and as to the
private habits of the complainant, was irrelevant and imperti-
nent, and should have been expunged from the record, if a
proper application for that purpose had been made.

The whole of the monies and drafts received by the de-
fendant Root belonged to the complainant, under the assign-
ment or agreement of S. Stewart, and should not have been
withheld from him after Root had notice of his equitable
right thereto, even if Root and J. Stewart were not chargeable
with notice of such rights at the time the order upon the post-
master general was received and there was no intention of
defrauding Bradley at that time. And as the defendant Root
refused to account for the money, and deliver over the drafts,
after he had full notice of Bradley's rights, the vice chancel-
lor has very properly charged him with the whole amount
of such money and drafts, with interest, and the costs of
this suit.

Upon the facts stated in the supplemental bill, which is tak-
en as confessed, and which facts appear from the testimony in
the cause, there can be no doubt as to the right of the defend-
ant Root to a decree over, against the defendant J. Stewart, for

1836.

Bradley
v.
Root.

the $105 of the complainant's money which was paid to Day, with the interest thereon from the time it was so paid; J. Stewart having realized, from the bond and mortgage turned out by the principal debtor, sufficient to pay the whole amount due to Day for which Root and J. Stewart were liable as joint sureties. And as J. Stewart was a co-actor in the transaction by which the complainant was deprived of the money on the mail contract, for his and Root's joint benefit, and with a full knowledge, according to his own admission, of Bradley's equitable right to the fund, I think he should be charged with the costs of this suit jointly with the other defendants, and should contribute his equal share with Root in the payment thereof.

That part of the decree between the co-defendants, which provides for an equitable contribution, will subject them to further unnecessary cost and expense, when the whole facts, upon which the right to equitable contribution depends, sufficiently appear upon the pleadings and proofs now before the court. The reference to a master to compute the interest on the $395 will also create an unnecessary expense which may as well be avoided, although it is not of itself sufficient to justify an appeal. The decree of the vice chancellor must therefore be so modified as to decree the payment of the $395, to the complainant, by the defendants Root and S. Stewart, with interest thereon from the first of July, 1823, until the same shall be collected or paid ; that the defendant Root have a decree over against the defendant J. Stewart for $105 and interest thereon from the same time ; and that the complainant recover his costs against all the defendants jointly, J. Stewart contributing equally with Root towards the payment of such part thereof as cannot be collected of S. Stewart on the execution. The complainant is also entitled to his costs on this appeal against all the defendants, and to be apportioned, as between Root and J. Stewart, in the same manner.

As one of the parties has died since the argument, the decree upon this appeal must be entered nunc pro tunc, as of the day when the hearing commenced before the chancellor.