DECIDED IN

# THE SUPREME COURT

OF THE

## STATE OF WASHINGTON.

[No. 3541.    Decided January 14, 1901.]

FIDELITY NATIONAL BANK OF SPOKANE, *Appellant*, v. D.
W. HENLEY *et al., Respondents.*

ASSIGNMENT — MONEYS RETAINED ON GOVERNMENT CONTRACT —
BREACH BY CONTRACTOR — COMPLETION BY SURETIES — RIGHTS OF
ASSIGNEE.

An assignment by a contractor of all moneys due or to be-
come due under his contract for a public building, under which
twenty per cent. of the moneys earned from time to time was
to be retained by the government until the completion and ac-
ceptance of the work, passed to the assignee the equitable title
in such twenty per cent., and the assignee was entitled thereto
as against the sureties on the contractor's bond, by whom the
work had been completed after the default of the contractor.

SAME — PAYMENT TO SURETIES — ASSUMPSIT BY ASSIGNEE AGAINST
SURETIES.

Where moneys due under a government contract were paid
to the sureties on the contractor's bond, who had completed the
work on his default, rather than to an assignee to whom they
were payable under an assignment by the contractor, of which all
parties had notice, an action will lie directly against the sureties
by the assignee to recover such moneys, although there is no
privity of contract between them, under the rule that where one
receives money under such circumstances as make it against

conscience that he retain it, even though . he has received it under a claim of right, an action for money had and received will lie at the instance of the party to whom it rightfully belongs.

Appeal from Superior Court, Spokane County.—HON. WILLIAM E. RICHARDSON, Judge. Reversed.

*Happy & Hindman,* for appellant.

*Henley, Kellam & Lindsley* and *A. G. Avery,* for respondents:

Where two parties claim payment of the same fund, and one of them is recognized and paid to the exclusion of the other, who was in fact the one entitled, the latter cannot maintain an action for money had and received against the former, he having received it under a claim of right. *Butterworth v. Gould,* 41 N. Y. 450; *Shultz v. Boyd,* 52 N. E. 750; *Dumois v. Hill,* 37 N. Y. Supp. 1093; *Sergeant v. Stryker,* 32 Am. Dec. 404; *Corey v. Webber,* 96 Mich. 357; *Nolan v. Manton,* 46 N. J. Law, 231 (50 Am. Rep. 403); *Trumbull v. Campbell,* 3 Gil. 502; *Neill v. Chessen,* 15 Ill. App. 266; 2 Enc. Pl. & Pr. 1021.

The opinion of the court was delivered by

DUNBAR, J.—On July 1, 1897, the United States entered into a contract with one N. B. Rundle to construct buildings at the army post near Spokane, and in said contract it was provided, among other things, that payments upon the same were to be made from time to time as the work progressed, and that from all payments twenty per cent. was to be retained until the completion of the work and the acceptance of the same by the government. At the time of making this contract, Rundle, as principal, and respondents herein, as sureties, subsequently to the ex-

ecution of the contract, executed a bond for the faithful
performance of the contract by Rundle. In considera-
tion of the advancement of money by the appellant to
enable Rundle to comply with such contract, Rundle ex-
ecuted and delivered to appellant a written assignment
of the money due or to become due from the United
States for the construction of the said buildings, and au-
thorized and empowered it to collect, receive, and receipt
for said moneys. The assistant quartermaster of the Unit-
ed States in charge of the construction of said work was
at once notified of this assignment, and consented thereto.
Relying upon this assignment, appellant advanced to
Rundle something over $47,000, only about $24,000 of
which has been paid. The money advanced went to pay
for material and labor which were used in the construc-
tion of the building. On the 13th day of August, 1898,
there was in the hands of the United States $6,186.40,
which had been earned by Rundle and which was held
back by the government under the terms of the contract.
At said date, Rundle failing to comply with the condi-
tions of said contract, the respondents, as sureties, took
up the work where Rundle left off and completed the
same, having, before they commenced work, been noti-
fied by the appellant of the assignment to it of the twenty
per cent. held back by the government. They thereafter,
however, received the same from the United States and
refused to pay it over to the appellant upon demand. Ac-
tion was brought against the respondent by this appel-
lant, on February 23, 1899, for said sum of money, and
the matters and things before enumerated constituted the
important part of the complaint. Respondents answered
and as a separate defense alleged the fact to be that they
were sureties on the bond of Rundle and that, when he
made his default, they, as sureties, took the contract off

his hands and completed the same, and that the United
States promised to pay to them the twenty per cent. held
back.   To this further answer a demurrer was interposed,
on the ground that the same did not state facts sufficient
to constitute a cause of defense to plaintiff's action, which
demurrer was overruled and exceptions taken.   Appel-
lant refusing to plead further, judgment for costs was
entered against it, from which judgment this appeal is
taken.

This case involves the determination of the question
whether or not, at the time of making this assignment,
Rundle had such an interest in the fund to be so held
back by the government that he could assign the same to
the appellant and vest the appellant with the title to said
fund; and whether an action would lie against the re-
spondents by the appellant for the recovery of such
money.   We think these questions must be answered in
the affirmative.   There are some cases, the most of which
are early ones, holding that where two claimants for the
same service apply for payment to the party bound to
pay, and one of them is recognized as having a just. claim
and is paid to the exclusion of the other, who was in fact
the one entitled, the party thus excluded derives no title,
against the party receiving payment, to the money paid,
and that there is no such privity between the parties as
will enable the party entitled to the money to maintain
an action for the same against the party receiving it.
This doctrine was announced in *Patrick v. Metcalf,* 37
N. Y. 332, and was for a time followed by the courts of
New York and some few other states, though in that case
we think there was a futile effort made to distinguish the
case of *Bradley v. Root,* 5 Paige, 632.   There the holder
of ·the mail contract from the postoffice department as-
signed it to the complainant, who took upon himself the

duty of carrying the mail according to the contract, during its continuance, and was to receive therefor all the moneys which should become payable under the contract, according to the terms thereof. No notice of this assignment was given to the postmaster general. Afterwards the assignor, who was insolvent, gave the defendant an order upon the postmaster general for the moneys which might become payable on the contract, to indemnify him against a responsibility which he had incurred as indorser for the assignor. The defendant took the order, having notice of the assignment. After the moneys had been earned by the complainant under the contract, the defendant presented his order to the postmaster general and received thereon $430. It was held by the chancellor that he was equitably bound to pay it over to the complainant. The latter New York cases, however, have been inclined to abandon the doctrine of *Patrick v. Metcalf,* *supra,* and go back to the rule announced in *Bradley v. Root, supra.* In *Roberts v. Ely,* 113 N. Y. 128 (20 N. E. 606), the court, in commenting upon this question, said:

"Assuming that the plaintiff is right in his construction of the facts, the case falls within the familiar doctrine that money in the hands of one person, to which another is equitably entitled, may be recovered in a common-law action by the equitable owner upon an implied promise arising from the duty of the person in possession to account for and pay over the same to the person beneficially entitled. The action for money had and received to the use of another is the form in which courts of common law enforce the equitable obligation. The scope of this remedy has been gradually extended to embrace many cases which were originally cognizable only in courts of equity. Whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in this form of action, subject to

the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons.    No privity of contract between the parties is required, except that which results from the circumstances.    The right on the one side, and the correlative duty on the other, create the necessary privity and justify the implication of a promise by the defendant to do that which justice and equity require."

See, also, *Hathaway v. Town of Cincinnatus,* 62 N. Y. 434, and *In re Le Blanc,* 14 Hun, 8.

In *Moore v. Shields,* 121 Ind. 267 (23 N. E. 89), it was held that, in an action for money had and received, there need be proved no privity of contract other than such as arises out of the fact that the defendant has received the plaintiff's money under circumstances which make it against conscience that he should retain it.    In *Allen v. Stenger,* 74 Ill. 119, it was said:

"Assumpsit always lies to recover money due on simple contract.    And this kind of equitable action to recover back money which ought not in justice to be kept is very beneficial, and, therefore, much encouraged.    It lies only for money which, *ex equo et bono,* the defendant ought to refund.    When, therefore, according to this rule, one person obtains the money of another, which it is inequitable or unjust for him to retain, the person entitled to it may maintain an action for money had and received for its recovery.    And it is not necessary that there should be an express promise, as the law implies a promise.    The scope of the action has been enlarged until it embraces a great variety of cases, the usual test being, does the money, in justice, belong to the plaintiff, and has the defendant received the money, and should he in justice and right return it to plaintiff?    These facts create a privity, and the law implies the promise to pay."

This doctrine is sustained by *Wilson v. Turner,* 164 Ill. 398 (45 N. E. 820); *Belden v. Perkins,* 78 Ill. 449; *Farmers' National Bank v. Robinson* (Kan.), 53 Pac. 762, and a multitude of other cases.

Outside of other authority, however, the question has been decided by this court in *Soderberg v. King County,* 15 Wash. 194 (45 Pac. 785, 33 L. R. A. 670, 55 Am. St. Rep. 878), where it was held that assumpsit would lie against the county for the recovery of sums charged by the sheriff as commissions upon foreclosure sales and by him mistakenly paid into the treasury, when such sums constitute a surplus in his hands to which the judgment debtor is entitled. In that case we cited:

*Pimental v. San Francisco,* 21 Cal. 352; *Bank of Metropolis v. First National Bank,* 19 Fed. 301; *Bayne v. United States,* 93 U. S. 642; *State v. Village of St. Johnsbury,* 59 Vt. 332 (10 Atl. 531); *Attorney General v. Perry,* 2 Comyns, 481; *Haebler v. Myers,* 132 N. Y. 363 (30 N. E. 963, 15 L. R. A. 588, 28 Am. St. Rep. 589); *United States v. State Bank,* 96 U. S. 30; *Criswell v. Whitney,* 13 Ind. App. 67 (41 N. E. 78); *Board of Education v. Robinson,* 7 N. M. 231 (34 Pac. 295); *Brand v. Williams,* 29 Minn. 238 (13 N. W. 42); *Knapp v. Hobbs,* 50 N. H. 476.

We think there can be no question but that the assignment in this case is supported by almost universal authority. See *East Lewisburg Lumber & Mfg. Co. v. Marsh,* 91 Pa. St. 96; *Hawley v. Bristol,* 39 Conn. 26.

Again, it must not be forgotten that the respondents were sureties of Rundle, the defaulting contractor. It will not be claimed that Rundle would have had a defense to this action if he had succeeded in obtaining the money from the United States after having made an as-

signment of the funds to the bank. We think the sureties stand in no better position than the principal. It was doubtless upon the strength of the bond .furnished that the bank advanced the money to Rundle for the purpose of carrying out his contract, and when the sureties took up the work that Rundle had abandoned and carried it forward to completion, they simply placed themselves in the position which Rundle had occupied, aided in this endeavor by the money which Rundle had obtained from the bank and which had been expended in performing the contract.

We think the court erred in overruling the demurrer to the respondent's defense, and the judgment will therefore be reversed, and the cause remanded with instruction to sustain said demurrer.

ANDERS, FULLERTON and REAVIS, JJ., concur.