[No. 28149.   Department One.   March 14, 1941.]

KING COUNTY, *Respondent*, v. ROBERT J. ODMAN *et al.,*
*Appellants.*[1]

[1]Reported in 111 P. (2d) 228.

*Mark M. Litchman,* for appellants.

*B. Gray Warner* and *Lloyd W. Shorett,* for respondent.

STEINERT, J.—Plaintiff, King county, brought suit to recover money previously received by defendants as rentals from certain real property the title to which had theretofore passed from defendants to plaintiff in consequence of a tax foreclosure proceeding. The court made findings, and entered judgment, in favor of plaintiff. Defendants appealed.

In 1935, appellants Odman were the owners of the real property involved in this action, and in March of that year they leased it to a partnership for a period of approximately five years, at a rental of seventy-five dollars per month. The lease was subsequently assigned by the partnership to a corporation, which has occupied the premises ever since.

In January, 1937, pursuant to a judgment of foreclosure of tax liens, the property was sold at public auction, and respondent became the purchaser thereof for the amount of its taxes, totalling $5,156.55. At the same time, local improvement assessments against the property were due the city of Seattle in the sum of $12,973.96. On August 2, 1937, pursuant to the previous sale, the county received a deed to the property. So far as the record discloses, it was not until June 24, 1938, however, that the appellants and the tenant learned that the county had become the owner. On that date, they were so notified by an agent of the county.

In the meantime, that is, between August 2, 1937, and July 1, 1938, the tenant of the property had continued to pay to appellants the monthly rental of seventy-five dollars as prescribed in the lease. On August 18, 1938, the county, pursuant to the authority conferred upon it by Rem. Rev. Stat. (Sup.), § 11294 [P. C. § 6882-133] (Laws of 1937, chapter 68, p. 233, § 1), sold the property at public auction, and the tenant above referred to became the purchaser thereof at a price of $8,700, payable in periodic installments.

It will be observed that the amount for which the property was sold to the tenant was $3,543.45 in excess of the amount of taxes due the county, but was $9,430.51 less than the amount of taxes and assessments combined. In such a situation, Rem. Rev. Stat., § 9393 [P. C. § 1028], provides that the excess of the proceeds of the sale over the amount of the general taxes, or so much of such excess as may be necessary, shall be paid to the city to be applied on the unpaid local improvement assessments on the property.

Shortly after the consummation of the sale by the county to the tenant, the county instituted this action to recover the amount of the rentals which appellants had received from the tenant subsequent to the time that the county obtained its deed.

The principal question presented upon this appeal is whether or not a county, after acquiring title to real property through tax foreclosure proceedings, is entitled to maintain against the former owner of the property an action for money had and received, and to recover from the former owner the amount of money which he received as rent for the period when title to the property was in the county, but which rent had been paid to the former owner according to the terms of a lease entered into by him and a tenant at a time prior to the tax foreclosure proceedings.

Upon that question, appellants contend, first, that, under a state of facts such as is here involved, an action for money had and received will not lie. Their argument is that the lease was extinguished by the sale of the property for taxes; that the tax sale and purchase did not create a new relation of landlord and tenant between the county and appellants' former tenant; that, since the lease was thus extinguished, the county was not entitled to the benefit of any of its provisions; and that there was no privity between the county and the appellants with respect to the money theretofore paid to appellants by their tenant. We may concede, for the purpose of argument, that the four propositions thus advanced by appellants are correct, but it by no means follows therefrom that respondent was not entitled to maintain against them an action for money had and received.

An action for money had and received may be maintained against one who has money in his hands which he is not entitled to retain as against the plaintiff, and want of privity between the parties is no obstacle to its recovery. *Soderberg v. King County,* 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670; *Fidelity Nat. Bank v. Henley,* 24 Wash. 1, 63 Pac. 1119; *Smith v. Gruber Lumber Co.,* 81 Wash. 111, 142 Pac. 493; *Bosworth v. Wolfe,* 146 Wash. 615, 264 Pac. 413, 56 A. L. R. 1117; *Gustafson v. Cullen,* 155 Wash. 107, 283 Pac. 1087.

Such action is based upon quasi-contract, or, as it is sometimes termed, constructive contract, or contract implied in law. A quasi-contract derives its efficacy not from the consent of the parties but from an implication having its basis in law, independent of agreement or intention. The obligation so imposed rests upon the principle that the law will assume that a man has promised to do what it is certain he should

do. *Byram v. Thurston County,* 141 Wash. 28, 251 Pac. 103, 252 Pac. 943; *Edwards v. Surety Finance Co.,* 176 Wash. 534, 30 P. (2d) 225; *Board of Highway Commissioners v. Bloomington,* 253 Ill. 164, 97 N. E. 280, Ann. Cas. 1913A, 471; *Miller v. Schloss,* 218 N. Y. 400, 113 N. E. 337.

██  The money here in controversy was paid by the tenant for the use of the property, but at the time that the money was so paid the property no longer belonged to appellants, but, rather, belonged to the county. Appellants' title to the property had been extinguished, and their right to receive the rentals therefrom had ceased. While appellants may have received the money under an honest, though mistaken, belief that it belonged to them, the fact is that it did not belong to them. When that fact became known to them, they had no right to retain the money as against the party entitled thereto, and, upon their refusal to turn it over on demand by the county, an action for money had and received was the appropriate remedy against them.

██  Appellants contend, next, that, in any event, the county would be entitled to recover the reasonable rental value only, not the fixed sum provided in the lease; and that, since there was no evidence upon that issue, the action of the county must fail for want of proof.

This is not an action in which the owner of property is seeking to recover unpaid rent from a tenant. It is an action in which the owner seeks to recover money which the occupant of the premises has paid as rent to persons who were not entitled to receive it, and who have no right to retain it. Since appellants have no right, in any event, to the money received by them, nor to any part thereof, it is not their prerogative, under the circumstances here shown, to contest the

amount to which respondent may be entitled for the use of its property. As between them and the lawful owner of the premises, the latter is entitled to the entire amount received by appellants. The only possible concern that appellants could properly have with respect to paying over the money to the county would be that their former tenant might demand the return of so much of the rental paid as exceeded the reasonable rental value of the property. If, however, appellants had any such apprehension, they might easily have protected themselves by paying the full amount into court and interpleading the tenant.

Appellants finally contend that they should have been given judgment, upon their cross-complaint, for the sum of $3,544, which is the difference between the amount of the unpaid taxes and the amount which the county realized from the sale of the property. That contention is based on Rem. Rev. Stat. (Sup.), § 11281 [P. C. § 6882-120] (Laws of 1937, chapter 118, p. 464, § 1, as amended by Laws of 1939, chapter 206, p. 768, § 47), which provides that, in the disposition of the proceeds of tax foreclosure sales, the surplus thereof over the amount of unpaid taxes and interest shall be refunded to the record owner of the property.

That statute, however, is not applicable here, because in this instance, we are not concerned with the proceeds of a tax foreclosure sale. Although the county had previously obtained *title* to the property by virtue of such sale, the *proceeds* involved here are those accruing from the *subsequent* sale by the county. The instant situation is thus governed by that portion of Rem. Rev. Stat., § 9393, which provides:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall *subsequently* be sold by the

**38**

county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, *and the surplus, if any, shall be distributed among the proper county funds:* . . . " (Italics ours.) See *Moe v. Brumfield,* 182 Wash. 608, 47 P. (2d) 847.

Under that statute, appellants would in no event have any interest whatever in the proceeds of the sale of the property by the county to a third party.

The judgment is affirmed.

ROBINSON, C. J., BLAKE, MAIN, and DRIVER, JJ., concur.

