[No. 21712. Department One. March 26, 1929.]

M. H. B. COMPANY *et al., Respondents,* v. THOMAS DESMOND, *as Sheriff for Pierce County, et al., Appellants.*[1]

[1]Reported in 275 Pac. 733.

*Louis J. Muscek* and *Wayne W. Keyes,* for appellants.

*Boyle & Boyle,* for respondents.

TOLMAN, J.—Respondents, being the owners of certain real property in the city of Tacoma and having in contemplation the erection of a building thereon, early in the year 1926, entered into negotiations with the appellant Ray M. Leftwick which resulted in their adding a second story to their building at an increased cost of some $30,000, which was so constructed as to be suitable for use as a bowling alley. On May 26, 1926, a written lease, duly acknowledged, covering the second story of the building, was entered into by the parties, and the lessee Leftwick proceeded to erect and install bowling alleys in the demised premises at a cost, probably, of upwards of $10,000.

The building was so far completed as to permit the tenant to begin the operation of the bowling alleys in September, 1926, and under the terms of the lease the rental then began to accrue. On September 22, 1926, Leftwick and those associated with him in his enterprise, for a valuable consideration, executed to appellant Lyons a note for $500, secured by chattel mortgage covering the fixtures and furniture so installed,

which mortgage was duly filed for record. Later, two other chattel mortgages were given, one for $3,000 and the other for $1,708.28, which were likewise duly executed and filed for record, both of which are now owned by appellant Wholesalers' Association of Tacoma.

The descriptions of the property covered differed somewhat in these mortgages, but all were so written as to cover fixtures at least in part. Nothing has been paid, either principal or interest, upon any of these mortgage debts.

The lessee failed to pay the rent due January 1, 1928, and again defaulted in the payment of rent on February 1, 1928. Some negotiations were had between the parties as to the overdue rent, and finally a three-day notice was served to pay or quit and surrender possession; and thereafter, on February 21, 1928, the lessee voluntarily quit, surrendered possession and delivered the keys to the lessors, walking out with only his personal effects. From and after such surrender, the respondents have been in possession of the demised premises, the completely installed bowling alleys and other fixtures therein, as well as some furniture and other personal property which cannot be classed as fixtures, claiming absolute ownership under the lease, at least, to the extent of all fixtures. Shortly after this, appellant Lyons began the foreclosure of his mortgage under the notice and sale statute, but before the sale could be had, respondents began this action in the superior court to enjoin such sale and seeking to foreclose a landlord's lien for rent for the months of January and February, 1928, and also to establish ownership in them of all of the fixtures and equipment situated in the demised premises under the terms of the lease.

The action was tried to the court, sitting without a jury, and the trial court found that all permanent fixtures were not removable under the lease; that the trade fixtures were removable under the terms of the lease; and, because they were not removed at or before the time the premises were surrendered, or within a reasonable time thereafter, the right to remove them expired. The court further held that the personal property, other than fixtures, could not be held under the lease by the respondents, because the lease was not executed and filed so as to comply with the law relating to chattel mortgages, but that respondents had a lien thereon for the rent due up to February 21, 1928, amounting to $469. The appeal is from a judgment accordingly.

The lease referred to contains the following provisions:

"It is further agreed that in the event that the said lessee should fail to faithfully comply with the terms of this lease, then any balance remaining in said deposit, together with any of said furnishings or equipment so purchased, shall be forfeited to the lessors as liquidated damages for such breach.

"IT IS FURTHER AGREED, That in the event of the breach, by the said lessee of the covenants contained in this lease, said furnishings and equipment so installed become the absolute property of the lessors, without any act or declaration on their part, and the said lessee hereby covenants and agrees that he will not remove, mortgage, sell, or otherwise encumber any of said furnishings and equipment."

And, also,

"8. That the lessee will, at the termination of said tenancy, quietly yield up possession of said premises with the fixtures which are now, or at any time during said term shall be thereon, in as good and tenantable condition in all respects, reasonable wear and use and

348

damage by fire or other unavoidable casualties excepted, as the same now are or may hereafter be. *Provided, however,* That permission is hereby given to the lessee to install in said leased premises bowling alleys, with bowling alley equipment, and it is Expressly Understood and Agreed, That the said lessee shall have the right to remove said alleys and their equipment upon the termination of this lease, providing that said lessee shall leave said demised premises, upon the removal of any such equipment, in as good condition as the same shall be before the installation of said equipment. It is further agreed that in the event that said lessee shall desire to install in said building, other fixtures or temporary partitions, he shall secure, from the lessors, their consent in writing thereto and said consent shall provide, whether or not such additions shall be removable upon the termination of the lease.''

As to the first quoted provision of the lease, which is an attempt to make the property of the tenant security for the payment of the rent, very clearly the trial court was right. Such a lien can be created, evidenced and preserved only by compliance with our statutory laws, and since there was no affidavit of good faith and the instrument was not filed for record, no lien was thereby created as against subsequent purchasers or encumbrancers in good faith. We do not pursue this subject at length, because no appeal is taken from that part of the judgment, and we mention it only because respondents seemed to argue that this first provision in some way adds strength to their claim under the second quoted provision of the lease. This we cannot concede, because the covenants are independent, each being intended to meet and cover an entirely different situation.

As to partitions and the like, or anything of that nature, which were clearly fixtures, appellants do not question the ruling of the trial court; their main

contention here is as to the trade fixtures, so called, or the bowling alleys and like fixtures installed for use in the lessee's business, and which, by the second quoted provision of the lease, might be removed by the tenant at or before the termination of the tenancy. As to them, it is contended, and the trial court held, that, by the terms of the lease, the parties thereto, by their fully expressed intentions, clearly made them trade fixtures, removable as trade fixtures are, and therefore, during the life of the lease, the title thereto was in the tenant and subject to his disposition, notwithstanding the covenants of the lease against removal or mortgaging.

The lease being unrecorded, we think, as against subsequent encumbrancers without notice, as were the mortgagees here, that position is correct, especially as the covenant in the lease against mortgaging is a part of the provision designed to make the rent a lien on the fixtures, which we have already seen was void under our chattel mortgage law.

If then, these were trade fixtures, even though they may be what the law terms chattels real, and the title was in the lessee with power of removal, we think no good reason can be advanced as to why the tenant might not mortgage them and the mortgages be and remain valid up to the time of the termination of the lease.

The real question here seems to be as to the rights of the mortgagees at and after the termination of the lease, not by lapse of time, but by failure to pay rent.

Under the language of the lease "upon the termination of this lease," it would appear to be immaterial as to what caused the termination, and under familiar rules of interpretation, these words of the lease must be held to mean a termination from any cause. So,

therefore, the rights of the mortgagees were the same on February 21, 1928, as they would have been if on that day the lease had terminated by the expiration of the full term.

The trial court seems to have based his ruling upon language found in *Donahue v. Hardman Estate*, 91 Wash. 125, 157 Pac. 478, as follows:

"If a tenant desires to exercise his right to remove trade fixtures, he must do so prior to surrendering possession. A mortgagee from a tenant has no greater right to remove trade fixtures from the premises after the tenant has surrendered possession to the landlord than the tenant himself would have. Whatever right or title the mortgagee from the tenant may have cannot rise higher than its source, and is measured by what the rights of the tenant would be at the time the mortgagee asserts his claim. *Bush v. Havird*, 12 Idaho 352, 86 Pac. 529; Jones, Chattel Mortgages, § 123; Jones, Landlord & Tenant, 723."

The appellant very justly points out that the language just quoted had no place in the decision of that case, and that the judgment of this court in that case was rested squarely, and necessarily so, upon the express agreement of the parties fixing the status of the property there involved.

Since, therefore, the *Donahue* case cannot be regarded as an authority upon our present question, we have been forced to re-examine the subject.

The authorities cited in the *Donahue* case to support its language are *Bush v. Havird*, 12 Idaho 352, 86 Pac. 529, which seems to clearly so hold; Jones on Chattel Mortgages (3d ed.) § 123, the gist of which is:

"Where a building has been erected by a tenant whose lease gives him the right of removal at the expiration of the lease, this right must be exercised within a reasonable time; and one who has taken from him a chattel mortgage upon the building acquires no better

right than the tenant had, and cannot remove the building after the tenant's right of removal has expired,''

and Jones on Landlord and Tenant, § 723, which reads:

''A mortgagee from a tenant stands in no better position than the tenant. His right to the property, as against the landlord, is only such as the tenant under whom he claimed had. It is for him to see to it that the building is removed within the time which, by the law and the terms of the contract, is given to the tenant for such a purpose. The same principle is involved and the same conclusion should be reached in case a creditor levied an execution upon a tenant's fixtures.''

In 26 C. J. pp. 717 and 718, it is said:

''Right of Removal by or against Third Persons—1. By Persons Claiming under Tenant. The right to remove a fixture annexed by the tenant may be exercised by one to whom the tenant, after making the annexation, has undertaken to transfer the fixture, either absolutely or by way of mortgage. And so, it seems, regarding a removable fixture as part of the land, one to whom the leasehold interest is transferred after the annexation may remove the article annexed. In such cases, however, of the nominal transfer of the fixtures as such, or as part of the land, it may be questioned whether what is transferred is not more properly the right of removal.

''An execution creditor of the tenant may effect a severance for the purpose of the execution.

''Limitations on right. A creditor or other person claiming under the tenant has ordinarily no right of removal if the tenant would not have such right. So if the tenant would have no right of removal owing to the expiration of the tenancy or his relinquishment of possession, one to whom he has sold, or mortgaged the article would not have such right. . ' . .

''That the leasehold is surrendered by the tenant does not, by the weight of authority, affect the right of removal by one to whom the fixture has previously been transferred or mortgaged. But there is authority for a contrary view. On the analogy of the deci-

sions above referred to, that one claiming under the tenant does not lose his right of removal by reason of the tenant's surrender, it has been held that he does not lose such right by reason of a forfeiture in favor of the landlord based on a voluntary act by the tenant. But here also there is authority to the contrary.

"Agreement with third person. If the tenant annexes a chattel procured by him from a third person under an agreement that the title shall remain in the latter, or on which he has given a mortgage to a third person, the rights of such third person take precedence of any right which the landlord may have to claim the article annexed.

"The statutory lien of the vendor of a chattel sold to the tenant and by him annexed was regarded as taking priority over the claim of the landlord to such article, upon his re-entry for breach of a condition."

The cases there cited in the notes seem to amply support the text. We find nothing in *Spencer v. Commercial Co.*, 30 Wash. 520, 71 Pac. 53, or *Bernard v. Crosby*, 121 Wash. 257, 209 Pac. 524, which conflicts with the law as quoted.

As we have seen, up to the moment of surrender, the tenant had title and the right to remove and therefore the right to mortgage the fixtures. He testified that he supposed he was surrendering these fixtures to his landlord, subject to the mortgages, and that the landlord would pay all such mortgage liens, but he disclosed nothing of this to the landlord. The tenant and mortgagor had no right to surrender the fixtures for, or on behalf of, the mortgagees, and indeed did not, in any manner, undertake to do so. Had he, at the time of surrendering the keys, demanded a reasonable time within which to remove the fixtures, the law would have accorded it. That he failed to make such a demand, should not be charged against encumbrancers in good faith for value. The landlord did, at the time

of surrender, have constructive notice of the chattel mortgages, by reason of their having been filed for record, and under the doctrine of reasonable time, after termination, for removal, we now hold that the right of removal had passed from the tenant to his mortgagees, and that they were entitled to a reasonable time, after notice of the termination of the lease, within which to remove. There is no doubt here that all so elected to assert their rights to the mortgaged fixtures within such reasonable time.

One more question remains. It is urged that the landlord's statutory lien was not preserved by bringing suit within the statutory time, as the act was construed in *Culp v. McMehan*, 123 Wash. 499, 212 Pac. 1069.

The statute, Rem. 1927 Sup., § 1203-1, provides:

"Such liens shall not be for more than two months' rent due or to become due, nor for any rent or any installment thereof which has been due for more than two months at the time of the commencement of an action to foreclose such liens; . . ."

Here, we think, it clearly appears that the tenant surrendered the property and the landlord accepted it in good faith as payment of the rent due, and no suit or action was necessary or proper. Having so taken possession before any of the rent was so much as two months over due, everything was thereby accomplished which could have been accomplished by suit.

It follows that that portion of the judgment below which vested title to the trade fixtures in respondents, must be reversed, and, after satisfying the lien for rent of $469, first out of the personal property, and second, out of the trade fixtures, the chattel mortgage liens on the trade fixtures must be recognized in their proper order. In all other respects the judgment is affirmed.

Remanded for further proceedings in harmony herewith.

FULLERTON, PARKER, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting)—In the case at bar, it does not appear that there was any collusion between the tenant and the landlord with intent to defraud the tenant's mortgagees of any rights which they might have. The tenant was behind in his rent, and had been served with a three-day notice to quit or pay rent, upon which it may fairly be presumed that the landlord had a right to start suit and obtain practically immediate possession of the premises under a writ of restitution. The majority opinion seems to hold that a tenant who is behind in his rent, and is subject to summary dispossession, can hand the keys of the premises to his landlord and demand a reasonable time within which to remove trade fixtures which he would be entitled to remove during the period of his tenancy, had he kept his lease in good standing. A tenant who is in arrears in his rent, and who has been served with a notice to pay the same or quit, is not in a very good position to demand anything. As is stated in Jones on Chattel Mortgages, § 123, quoted by the majority, one who has taken from a tenant a chattel mortgage upon a building erected by the tenant whose lease gives him the right of removal at the expiration of the lease, acquires no better right than the tenant himself. Jones on Landlord and Tenant, § 723, also quoted by the majority, is to the same effect. In the case at bar, it appears that the tenant supposed that the landlord would pay the mortgages upon the trade fixtures, but it does not appear that his supposition was based upon anything said or done by the landlord. In my opinion, the mortgagees are bound by the act of the tenant, their mortgagor, in, without reservation, surrendering

the premises to the landlord. They had the right to protect their lien by seeing that the rent was paid, or taking other steps provided by law for their protection. In my opinion, a tenant, situated as was appellant Leftwick, must remove trade fixtures, which his lease allows him to remove, upon his own time and before the termination of his lease. The cases upon this point are in conflict, but I agree with the editor of Corpus Juris who says (vol. 26 C. J., Fixtures § 94, p. 707):

"It is perhaps difficult to see why a tenant should be enabled, by wrongfully holding over, to extend the period for removal, thus profiting by his own wrong."

As to the tenant's mortgagee, the doctrine is laid down in 26 C. J. 718, quoted by the majority.

Believing that the appellants who hold chattel mortgages upon the trade fixtures in question have lost their liens thereon, I dissent from the opinion of the majority holding that those liens are still in existence.