[No. 25816. Department One. December 19, 1935.]

J. A. KOHOUT, *Respondent*, v. J. J. BROOKS *et al., Appellants.*[1]

[1]Reported in 52 P. (2d) 905.

*Louis J. Muscek,* for appellants.

*Thomas MacMahon,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover damages for the conversion of a quantity of shoe-repair machinery and equipment. Trial before a jury resulted in a verdict for plaintiff. From a judgment on the verdict, defendants have appealed.

The facts which the jury was entitled to believe and find, in support of its verdict, are as follows:

On and prior to October 1, 1928, one F. L. Paddock, owning the machinery and equipment with which we are here concerned, operated a shoe-repair shop in

Tacoma. On that day, he sold the machinery and equipment to David Sims, under a conditional sale contract. On the same day, Paddock assigned his interest in the contract to Pacific States Securities Corporation to secure an advancement of $550, which the corporation had made to Sims for the purchase of the machinery and equipment. The conditional sale contract and assignment were never filed for record. Sims took over the shop, wherein the machinery and equipment were still located, and placed his father-in-law, John Campbell, who was a shoe-repair man, in charge of it.

Shortly thereafter, Sims sold his interest in the machinery and equipment to Henry P. Bond, under an arrangement by which Bond paid Sims two hundred dollars in cash and agreed to pay the $550 owing to Pacific States Securities Corporation under the conditional sale contract. At the same time, a bill of sale of the property, dated October 15, 1928, and running from Paddock to Bond, was delivered to Pacific States Securities Corporation by Sims, to be in turn delivered to Bond upon payment of the $550. The bill of sale was subsequently delivered to Bond, according to the agreement, and was filed for record on December 28, 1932. Campbell, who was also the father-in-law of Bond, remained in possession of, and operated, the shop, under an agreement with Bond by which Campbell was to pay rent to the landlord of the premises, also to pay the taxes on the personal property and an additional monthly sum to Bond for the use of the machinery and equipment.

In the meantime, during the year 1930, the appellants Brooks had become the owners of the building in which the shop was located, and Campbell, who operated the shop, became their tenant under a month to month tenancy.

In the course of time, Campbell became unable to pay his rent, and Brooks, learning that Bond owned the machinery and equipment, tried to get him to pay the rent, but without success. By April of 1934 the delinquent rent amounted to $304, covering a period of about two years, and, as a result, Campbell had grown discouraged with the business, and appellants were becoming dissatisfied with their tenant.

About this time, Bond, who still owned the machinery and equipment, entered into negotiations with respondent Kohout for its purchase by the latter. Kohout intended to remove the property from the shop in which it was located. The deal between Bond and Kohout had reached the point where it was practically closed between them, but, on going to the shop and making demand for the property, they were told by Brooks that no sale could be made, and that the property could not be removed, until the rent *in full,* amounting to $304, was paid.

Under the impasse thus created, Campbell abandoned the premises and went to British Columbia, and appellants thereupon changed the lock on the door of the shop to prevent removal of its contents by Bond or Kohout. In August, 1934, appellants, still asserting their right to retain the machinery and equipment, rented the shop to a third party and, at the same time, turned the machinery and equipment over to him for use in the shoe-repair business. That tenant has ever since been operating the shop and using the personal property therein.

In February, 1935, Bond executed to Kohout a bill of sale of the machinery and equipment, pursuant to the previous negotiations between them, and, at the same time, assigned to the latter his claim against the appellants for the alleged conversion of the property.

Kohout then began this action and, as already stated, obtained a favorable verdict and judgment.

There are fourteen assignments of error, which, for convenience, may be grouped under four heads.

■ The first assignment is that the court erred in overruling appellants' motion for dismissal and nonsuit at the conclusion of the case made by respondent. The appellants did not stand upon their motion, but proceeded to introduce evidence in support of their defense. The case, therefore, now stands, not upon respondent's evidence alone, but upon the case made by all of the evidence, and the motion must therefore be deemed to have been waived. *Alkire v. Myers Lumber Co.*, 57 Wash. 300, 106 Pac. 915; *Olsen v. Peerless Laundry*, 111 Wash. 660, 191 Pac. 756; *State v. Brown*, 178 Wash. 588, 35 P. (2d) 99.

■ The second and third assignments of error relate to the introduction in evidence, by respondent, of the conditional sale contract and the bill of sale from Paddock to Bond. Respondent alleged in his complaint that he was the owner of the machinery and equipment and entitled to its possession. He derived his title thereto through Bond. The evidence was offered as links in the chain of title. The two instruments, if in existence and valid, were corroborative evidence of Bond's title and, likewise, muniments of respondent's title. The evidence was properly admitted.

■ By a series of ten assignments of error, appellants raise the principal question in issue in this case. It is appellants' contention that, before an action for conversion may be maintained, there must be a demand for the property; that the demand in this case, if any was made at all, was made *before* respondent became the owner of the property; and that,

since .( )nd^n` made n ) demand *f* э beэame the
own( c   · .γ˙

Th    ^          ·o broad
nor   ..  .,     ·. .γ.`    `ι     ··       .tion de-
pends upon the partiou.. .   ᴀ   .   .ed and the
facts of the particular case. The complaint in this
case alleged that the respondent was the owner of
the property by virtue of a conveyance from Bond;
that Bond had previously demanded possession of the
property from appellants, and that the appellants had
refused to allow the property to be removed unless
and until the entire rental bill was paid; and that Bond
had subsequently assigned to respondent his right of
action for the conversion of the property by appel-
lants. The answer denied all these allegations gen-
erally, and by an affirmative defense pleaded that
Campbell had transferred the title to, and possession
of, the property to appellants in settlement of appel-
lants' lien for rent, amounting to $304.

It may be noted here that appellants did not have
a lien for the entire amount of rent, but only a statu-
tory lien for two months' rent, due or to become due.
It may also be noted that the alleged transfer of title
from Campbell to appellants took place after appel-
lants had learned that the property belonged to Bond.
The evidence disclosed also that appellants not only
claimed to own the property, but that they had exer-
cised full dominion over it by delivering it to a third
party for use.

Upon the issue tendered by appellants, the contest
between the parties was one of title to the property.
If the title was in appellants, as they contended, then
there was no conversion. But the verdict of the jury
established the facts contrary to appellants' title.

Moreover, appellants' acts and attitude through-
out the entire controversy showed conclusively that a

demand, even if it had been made as appellants contend that it should have been made, would have been wholly unavailing. Under such circumstances, a demand is not a condition precedent to the maintenance of an action for replevin or for damages for conversion of property. *Seattle National Bank v. Meerwaldt,* 8 Wash. 630, 36 Pac. 763; *Armour v. Seixas,* 80 Wash. 181, 141 Pac. 308; *Hill's Garage v. Rice,* 134 Wash. 101, 234 Pac. 1023. The mere fact that respondent pleaded, and offered to prove, what is claimed by appellants to have been an improper demand, does not change the rule.

The remaining assignment of error is directed to an instruction which, in part, advised the jury that a landlord's statutory lien for rent could be claimed or asserted only by the institution of a lawsuit. Appellants contended that the machinery and equipment were turned over to them in payment of the rent due, and that, therefore, no suit to enforce the lien was necessary.

If the facts were that the tenant Campbell had the right to, and did, turn over the machinery and equipment in payment of two months' rent, under the statute, then appellants' contention would be well founded. *M. H. B. Co. v. Desmond,* 151 Wash. 344, 275 Pac. 733. But that is not the situation here. Campbell had no title to, nor any interest in, the property and, therefore, could not transfer it to appellants in payment of all, or any part, of the rent owing by him. As against the true owner, the statutory lien could be preserved and enforced only by the institution of a suit. *Culp v. McMehan,* 123 Wash. 499, 212 Pac. 1069.

But more than this, the instruction contained a further statement to the effect that, if appellants refused to surrender possession unless and until the

*entire* delinquent rent, which was for more than two months, was paid, that, in law, would constitute a conversion. The record discloses that appellants never made claim for only two months' rent, nor is it now contended that the property was turned over to them for that amount. The claim was for the entire rent, and the refusal to surrender was based on a claim for that amount. By their acts, appellants exercised a wrongful assumption of authority over another's property, in exclusion and defiance of, and inconsistent with, the true owner's right, depriving the latter of possession until he should pay what he was not lawfully required to pay. The deprivation was permanent, or at least indefinite, according to the owner's inability or refusal to pay an unlawful exaction. That amounted to a conversion by the appellant. 26 R. C. L. 1098, § 3. The instruction was not erroneous.

The judgment is affirmed.

MITCHELL, TOLMAN, BEALS, and GERAGHTY, JJ., concur.