[No. 32255. *En Banc.* March 10, 1953.]

THE CITY OF SEATTLE, *Appellant*, v. ANNA FENDER *et al.,*
*Respondents.*[1]

*A. C. Van Soelen, J. Ambler Newton, John A. Logan,* and
*G. Grant Wilcox,* for appellant.

*Macbride, Matthews & Hanify* and *Thomas H. Macbride,*
for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment
of involuntary nonsuit, dismissing the cause of action of
plaintiff with prejudice.

In 1939 and prior thereto, one Denis Murphy was the
owner of a triangular piece of land in the city of Seattle,
bounded on the north by Blanchard street, on the east by
Western avenue, and on the west by Elliott avenue. The lat-
ter street extends northwesterly and southeasterly and con-

[1]Reported in 254 P. (2d) 470.

nects with Western avenue at the apex of the triangle. A building of frame construction, consisting of apartments and stores, was, and still is, located on this property.

Prior to June 14, 1939, a condemnation action was instituted by the city for the purpose of extending and establishing Armory way. The city, in the action, acquired a portion of the northwest corner of the triangle, on which was a part of the building. The judgment in favor of Murphy, in the sum of $11,660, recited, "which sum includes the cost of readjusting or moving the improvement standing in whole or in part upon said land, to or upon the part of the land remaining, together with the depreciation in the market value of said improvement by reason of said readjustment or moving." In addition, the sum of $2,500 was awarded as severance damage to the remaining portion of the property. September 27, 1943, Murphy receipted for $14,160 as payment on the judgment.

September 1, 1944, Murphy executed a real-estate contract to sell his property to George E. Mitzel. The contract contained a description of the property, after which there was added:

" . . . EXCEPT portion condemned by the City of Seattle for street purposes under King County Superior Court Cause No. 292884, records of said county; THIS sale includes all furniture and fixtures owned by seller and now located on said property."

This contract was assigned by Mitzel to Mrs. Fender, September 19, 1944.

September 20, 1944, Murphy conveyed his property to Mrs. Fender by warranty deed. It described the property as follows:

"That portion of Lots Two (2), Three (3), Four (4), Six (6) and Seven (7), lying northeasterly of Elliott Avenue, Block Thirty-four (34), Plat of an Addition to the City of Seattle, as laid out by A. A. Denny (commonly known as A. A. Denny's 6th Addition to the City of Seattle), EXCEPT portion condemned by the City of Seattle for street purposes under King County Superior Court Cause No. 292884, records of said county."

Mrs. Fender occupied the entire building until she contracted to sell to the Cramlets June 1, 1949. About January 1, 1949, she was notified to pay ground rent of twenty-five dollars per month to the city. She paid to July 1, 1949, and Cramlet continued paying until March 31, 1950. March 27, 1950, the city notified Cramlet to remove that portion of the building standing on the right of way on or before May 1, 1950. Nothing was done, and this action was commenced July 11, 1951.

In its complaint, the city alleged the prior condemnation proceedings; the satisfaction of judgment by the predecessors in interest of defendants; that the removal and readjustment was to be done at the sole cost and expense of the respondents in the condemnation proceedings; that defendants, although notified, have failed and refused to remove and readjust the building; that an adjacent highway, to-wit, the Alaskan way viaduct project, is now under construction, and the failure to remove and readjust the building by defendants constitutes a present and continuing nuisance. (Note: The Armory way project, for which the condemnation proceedings were instituted, was never started and apparently has been abandoned.) The prayer asked

". . . that a mandatory injunction be issued, permanently enjoining and restraining the defendants and each of them from maintaining any structure upon the property heretofore acquired by the plaintiff for highway purposes and directing them to remove any structure from that portion of the property condemned by the plaintiff."

It should be noted that the city never attempted to require Denis Murphy to live up to his obligation, and that, at the time of trial, as was so aptly stated by the trial court, he had gone "over the hill and far away."

The trial court rejected a finding proposed by the city that the defendant Fender, by the deed from Murphy, acquired from him all right, title, and interest in and to the land and the improvements and appurtenances thereon, and particularly the entire apartment and store building, including the portion thereof standing on the land acquired by the city for street purposes. The court did find that from Sep-

tember 19, 1944, until June 1, 1949, Mrs. Fender *occupied* part or all of that portion of the building situated on the land acquired by the city. The court also found that no evidence was introduced of any obligations undertaken by the defendants or any of them to perform the duties of Denis Murphy with respect to removing structures from the land acquired by the city.

Appellant assigns error (1) in finding that there was no evidence of any "obligation" to respondent Anna Fender with respect to removing a portion of the building from the land acquired by the city for street purposes; (2) in concluding that there was no obligation on the part of respondents to make such removal and that they were entitled to an involuntary nonsuit; (3) in entering judgment dismissing the action.

RCW 8.12.140 (a portion of the law of eminent domain by cities) provides:

"If there is a building standing, in whole or in part, upon any land to be taken, the jury shall add to their finding of the value of the land taken the damages to the building. If the entire building is taken, or if the building is damaged, so that it cannot be readjusted to the premises then the measure of damages shall be the fair market value of the building. If part of the building is taken or damaged and the building can be readjusted or replaced on the part of the land remaining, then the measure of damages shall be the cost of readjusting or moving the building, or the part thereof left, together with the depreciation in the market value of the building by reason of such readjustment or moving."

*In re Seattle*, 26 Wash. 602, 67 Pac. 250, was a case in which the city of Seattle instituted an action to ascertain damages to abutting property owners on a street by work of regrading. The award in favor of the owners of the lot in question was five hundred dollars. After the work of regrading had commenced, but before the judgment against the city was entered, a mortagee foreclosed a mortgage on the property in question. After the return of the verdict in the action instituted by the city, the mortgagee, who was the purchaser at the foreclosure sale, filed a petition praying for the entry

of a judgment awarding him the amount assessed as damages. This court held:

"It has been uniformly held that the right to damages for an injury to property is a personal right belonging to the owners of the property, which will not pass by deed unless expressly conveyed."

It would appear that, if the right to damages awarded to the owner of property will not pass by deed unless expressly conveyed, an obligation of the owner as a consideration for a part of the award would not pass by deed unless provided therein.

In *Kakeldy v. Columbia & P. S. R. Co.*, 37 Wash. 675, 80 Pac. 205, the city of Seattle, by ordinance, vacated a street. Defendant constructed a railroad thereon. Thereafter, the owner of a lot abutting thereon sold to plaintiff. Plaintiff commenced an action for an injunction and for damages because the railroad company was obstructing plaintiff's access to his premises. We held:

"The deeds under which he claims title are in evidence. They contain no transfer to him of any right of action which his grantor may have had against the railroad company, if he had any such. . . .

"The right of action for the damages, in such a case, belongs to him who was the land owner at the time the railroad company took possession and constructed its road, and his grantee takes the land subject to the burden of the railroad. Such damages, being in the nature of a compensation for trespass, constitute a personal claim in favor of the owner at the time the injury occurred, and they do not run with the land."

Appellant contends that Mrs. Fender, as grantee, took her land subject to the burden of moving or readjusting the portion of the building on the land acquired by the city. The damages awarded to Murphy, together with the obligation of removal, were personal to him at the time the injury occurred and did not run with the land.

"A grantee does not become *personally* liable for the obligations of his grantor to a third person, even where the same is a lien or a charge upon the land conveyed, unless the obligation arises under a covenant running with the land.

. . . A covenant is said to run with the land when it touches or concerns the land granted or demised. Generally speaking, a covenant touches or concerns the land if it is such as to benefit the grantor or the lessor, or the grantee or lessee, as the case may be. As the term implies, the covenant must concern the occupation or enjoyment of the land granted or demised and the liability to perform it, and the right to take advantage of it must pass to the assignee. Conversely, if the covenant does not touch or concern the occupation or enjoyment of the land, it is the collateral and personal obligation of the grantor or lessor and does not run with the land." *Pelser v. Gingold,* 214 Minn. 281, 8 N. W. (2d) 36.

There was some testimony to the effect that, at the time Mrs. Fender was selling to the Cramlets, she recognized an obligation to remove the portion of the building in dispute. This was denied by Mrs. Fender. Any obligation on her part arising out of the deed from Murphy must be based upon the transaction at the time the deed was issued to her. We hold that the deed of September 20, 1944, did not convey to Mrs. Fender any obligation on her part to remove or readjust the portion of the building, for which work Murphy had been paid.

Appellant contends, however, that there is an obligation on the part of Mrs. Fender to remove the portion of the building in question because it encroaches upon a street and thereby creates a public nuisance. Appellant calls our attention to the following nuisance statutes:

RCW 7.48.120. "NUISANCE DEFINED. Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures, or endangers the comfort, repose, health, or safety of others; . . . unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any . . . public . . . street, or highway. . . ."

RCW 7.48.130. "PUBLIC NUISANCE DEFINED. A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal."

RCW 7.48.140. "PUBLIC NUISANCES ENUMERATED. It is a public nuisance: . . .

"(4) To obstruct or encroach upon public highway, private ways, streets, . . ."

RCW 7.48.170. "Successive Owners Liable. Every successive owner of property who neglects to abate a continuing nuisance upon or in the use of such property, caused by a former owner, is liable therefor in the same manner as the one who first created it."

RCW 7.48.190. "Nuisance Does Not Become Legal by Prescription. No lapse of time can legalize a public nuisance amounting to an actual obstruction of public right."

If Mrs. Fender owns the entire building, she is maintaining a public nuisance, in that a portion of the building is encroaching upon a street. In order to determine what she owns, we must refer back to the original transaction with Murphy. The deed conveyed to her "that portion of Lots 2, 3, 4, 6 and 7, . . . Except portion condemned by the city of Seattle for street purposes under King County Superior Court Cause No. 292884, records of said county."

If, after satisfying the judgment and before selling to Mrs. Fender, Murphy had bought a lot across the street and had moved that portion of the building lying on the land condemned by the city, across the street onto the newly acquired lot, the city could not have complained. It had paid Murphy, as damages, the cost of readjusting the part of the building left on the land it had condemned. Having been paid damages, Murphy could do with that portion of the building as he saw fit.

Let us assume that, after the deed to Mrs. Fender, Murphy had purchased a lot across the street and was commencing to move the portion of the building in question onto the new lot; that Mrs. Fender sought to enjoin him from so doing; and that in the trial she merely introduced the deed and the judgment in the condemnation suit. We feel that, with that evidence alone, she could not have prevailed.

Here the trial court found that Mrs. Fender *occupied* the entire building, but refused to find that she *owned* the entire building. In its oral decision, the court said:

"Mrs. Fender bought that portion of 2 and 3 up to the city line. Now, she may have some deal with the original man,

or some assignee of his, by which there was a right to use, and it is rather obvious there must have been something of that kind. It may be suggested that either she, or one of the main parties between Murphy and herself—I forget who it was—may have agreed with Murphy that he was going to move the building as, if, and when the city said move it. We haven't any evidence of it.

"As far as I can determine from the evidence here, Mrs. Fender and her contract purchaser have, since 1944, been the occupants of the triangle, and they have used it. But there is no title in it. It appears from the chain of title here that Mr. Murphy still owns this hatched area, so far as the building is concerned."

Our examination of the record convinces us that the evidence does not clearly preponderate against the finding of the trial court.

*Cutrona v. Columbus Theatre*, 107 N. J. Eq. 281, 151 Atl. 467, was an action for a mandatory injunction to compel the removal of encroachments on the complainants' land. Columbus Theatre, Inc., erected a theater which encroached on a strip two feet five inches wide by one hundred feet long, on complainants' land. The defendant Lodi American Theatre Company was the lessee. After the suit was started, the holder of a mortgage foreclosed, and the Lodi Company purchased at the foreclosure sale and owned the property at the time of the trial. The vice chancellor held:

"The encroachment on complainants' property was erected by Columbus Theatre, Incorporated, and the complainants may have an injunction commanding this defendant to remove the encroachment. It appears likely, however, that this defendant is insolvent and that such an injunction will afford the complainants no actual relief. The defendant Lodi American Theatre Company did not erect the building and has done no act to injure complainants and cannot be compelled to undergo the expense of removing the encroachment. *Stevens v. Stevens, 11 Metc. 251; Hodgkins v. Farrington (Mass.), 22 N. E. Rep. 73.* But it has no title, whether as lessee or as purchaser at foreclosure, to so much of the theatre building as stands on complainants' land."

■ The record is devoid of any evidence that Mrs. Fender purchased that portion of the building situated on the land condemned by the city, or that she is claiming such portion. The deed from Denis Murphy conveyed only to the condemnation line. In a proper proceeding, she could be enjoined from occupying the land owned by the city, if such occupancy encroaches upon a public street, thereby creating a nuisance. But this is not such a case. This is an action to enjoin respondents from maintaining any structure upon the property belonging to the city, and praying that they be directed to remove such structure. The trial court properly denied the injunction.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, FINLEY, WEAVER, and OLSON, JJ., concur.

HAMLEY, J. (concurring)—Whether or not Mrs. Fender owns the portion of the building which encroaches on the street, depends upon what was conveyed to her in the deed she received from Murphy. The description contained in that statutory-form warranty deed reads as follows:

"That portion of Lots Two (2), Three (3), Four (4), Six (6) and Seven (7) lying northeasterly of Elliott Avenue, Block Thirty-four (34), Plat of an Addition to the City of Seattle, as laid out by A. A. Denny (commonly known as A. A. Denny's 6th Addition to the City of Seattle), EXCEPT portion condemned by the City of Seattle for street purposes under King County Superior Court Cause No. 292884, records of said county."

The deed makes no reference to buildings or appurtenances. However, the conveyance of land carries with it the buildings and appurtenances unless expressly excluded. In my opinion, the quoted words and figures purport to be nothing but a description of land. In effect, it conveys that portion of the land lying within the boundaries of the entire tract described, except that portion of the land which was condemned by the city. The buildings and appurtenances which passed to Mrs. Fender were therefore only those which are situated on the land conveyed.

In order to give this description the meaning ascribed to it by appellant, it would be necessary to read into the description, immediately preceding the exception, the words "together with the buildings and appurtenances situated thereon." Then the exception, being referenced to the condemnation judgment (which did not include the building), would not except the portion of the building in question, but only the land on which it is situated.

But such a provision, whether expressly included or only inferred, normally comes at the end of the entire land description in such an instrument. In the absence of anything in the instrument to indicate a contrary intent, it should be so read here. If so read, then the exception merely marks a land boundary line, and no building or portions thereof included within the excepted area were conveyed to Mrs. Fender.

One further comment, relative to a statement which appears at an earlier point in the majority opinion: The majority refers to "the duties of Denis Murphy with respect to removing structures from the land acquired by the city." I am not sure that he had any "duties." Since it is not necessary to decide the point, I doubt that we should infer that he did.

DONWORTH, J., concurs with HAMLEY, J.

---

April 14, 1953. Petition for rehearing denied.