[No. 6540–1–II.  Division Two.  December 3, 1984.]

MULLENDORE THEATRES, INC., *Respondent,* v. GROWTH
REALTY INVESTORS CO., *Appellant.*

*Robert Pauw,* for appellant.

*Ronald E. Thompson,* for respondent.

WORSWICK, J.—Does a landlord's covenant to refund a tenant's security deposit run with the land, thus obligating a successor landlord to refund it? We hold it does not, where the lease permits but does not require that the deposit, if forfeited, be used for the benefit of the leased property.

In 1969, Conner Theatres Corporation became tenant of a part of the Jones Building in Tacoma under a lease that required a deposit of $22,500 as security for performance of the tenant's obligations. The lease provided in part:

Should the Tenant default in the performance of said lease, the landlord shall be entitled to apply said deposit on account of any damages which Landlord may sustain by reason of such default by the Tenant. In the event the Tenant shall not be in default under the provisions of said lease, the said deposit shall be returned and paid to the Tenant at the expiration of this lease, to wit, at the close of business on July 31, 1979.

The lease also provided that all covenants in the lease would run with the land.

In 1974, Conner assigned its leasehold interest to Mullendore Theatres, Inc. At that time, the deposit was reduced to $6,000. Sometime before the assignment, the original landlord had transferred the property to North Pacific World Trade Center, Ltd. Growth Realty acquired it when North Pacific defaulted on a note and deed of trust in 1975. Growth ultimately sold it to the City of Tacoma. The City was concerned with the potential $6,000 liability, and wanted to reduce the purchase price by this amount. To avoid this, Growth agreed to indemnify the City for any liability it might have for the security deposit. In 1980, Mullendore negotiated a new lease with the City. To facilitate the transaction, it released any claims it might have against the City for return of the security deposit, but purported to reserve its claims against others who might be liable. Thereafter, it brought this action against Growth.

The trial court held that the covenant to refund the security deposit ran with the land and bound Growth through the indemnification clause in the sales contract between Growth and the City. Growth appeals, contending that the covenant did not run. In the alternative, Growth contends that any obligation it may have assumed was extinguished by Mullendore's release of the City. We agree with Growth's first contention.

■■ A lease covenant does not run with the land unless it touches or concerns the land. *Rodruck v. Sand Point Maintenance Comm'n,* 48 Wn.2d 565, 295 P.2d 714 (1956); *Seattle v. Fender,* 42 Wn.2d 213, 254 P.2d 470

(1953); *Leighton v. Leonard,* 22 Wn. App. 136, 139, 589 P.2d 279 (1978). To do so, it must be so related to the land as to enhance its value and confer a benefit upon it. Otherwise, it is a collateral and personal obligation of the original lessor. *Rodruck,* 48 Wn.2d at 575.

In order to be a running covenant, a promise to pay money must restrict the use of the funds to the benefit of the property. *Rodruck,* 48 Wn.2d at 578.[1] *See also Spillane v. Yarnalowicz,* 252 Mass. 168, 147 N.E. 571 (1925); *Nassau Cy. v. Kensington Ass'n,* 21 N.Y.S.2d 208 (Sup. Ct. 1940); *Masury v. Southworth,* 9 Ohio St. 340 (1859); *Lundeberg v. Dastrup,* 28 Utah 2d 28, 497 P.2d 648 (1972); *Burton v. Chesapeake Box & Lumber Corp.,* 190 Va. 755, 57 S.E.2d 904 (1950).

There was no such restriction in this covenant. The landlord was not required to spend the money for repairs or maintenance, or in any other way related to the property. He was not even required to transfer it to his successors. The covenant was not directly related to, and did not touch and concern, the property.[2]

Since it does not touch and concern the land, this covenant cannot run, despite the language in the lease which says it does. Intent is not enough to make a running covenant out of one which is by its nature personal. *Fresno Canal & Irrig. Co. v. Rowell,* 80 Cal. 114, 22 P. 53 (1889); *Johnson v. Myers,* 226 Ga. 23, 172 S.E.2d 421 (1970); *McDonald's Corp. v. Blotnik,* 28 Ill. App. 3d 732, 328

---

[1]In *Rodruck,* the court held a promise to pay assessments for maintenance to be a running covenant. It distinguished that covenant from one which provided for the payment of dues to a property owners association but did not specify how the money was to be spent.

[2]This proposition is supported by the weight of authority from other jurisdictions. Almost all courts that have considered the question have held that a promise to return a security deposit does not run with the land. *See Federated Mortgage Investors v. American Sav. & Loan Ass'n,* 47 Cal. App. 3d 917, 121 Cal. Rptr. 137 (1975); *McDonald's Corp. v. Blotnik,* 28 Ill. App. 3d 732, 328 N.E.2d 897 (1975); *Mauro v. Alvino,* 90 Misc. 328, 152 N.Y.S. 963 (1915); *Partington v. Miller,* 122 N.J.L. 388, 5 A.2d 468 (1939); *Tuteur v. P. & F. Enters., Inc.,* 21 Ohio App. 2d 122, 255 N.E.2d 284 (1970).

N.E.2d 897 (1975); *Sjoblom v. Mark,* 103 Minn. 193, 114 N.W. 746 (1908); *Caullett v. Stanley Stilwell & Sons, Inc.,* 67 N.J. Super. 111, 170 A.2d 52 (1961); *Eagle Enters., Inc. v. Gross,* 39 N.Y.2d 505, 349 N.E.2d 816, 384 N.Y.S.2d 717 (1976); *Raintree Corp. v. Rowe,* 38 N.C. App. 664, 248 S.E.2d 904 (1978); *Abbott v. Bob's U–Drive,* 222 Or. 147, 352 P.2d 598 (1960); *Hurxthal v. St. Lawrence Boom & Lumber Co.,* 53 W. Va. 87, 44 S.E. 520 (1903).

The City had no obligation to return the security deposit. Growth agreed only to indemnify the City against potential liability. That agreement did not create any new liability. We need not consider further arguments concerning the effect of the transactions between the City and Growth or the City and Mullendore.

Reversed.

PETRICH, C.J., and REED, J., concur.