IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PEYTON BUILDING, LLC, a Washington Limited Liability Corporation, | ) ) ) | No. 30840-5-III |
| Respondent, | ) ) ) | |
| v. | ) ) | |
| | ) | PUBLISHED OPINION |
| NIKO'S GOURMET, INC., a Washington corporation; LAITH and ABIR ELAIMY, a marital community, | ) ) ) ) | |
| Appellants. | ) ) ) | |

BROWN, J.—Tenant Niko's Gourmet Inc., and its personal guarantors Abir and

Laith Elaimy, appeal the trial court's summary judgment granting breach of lease

damages to Peyton Building, LLC. Peyton is the successor in interest to the leased

property by a purchase agreement but is not an assignee of the lease or guarantee.

Even so, the court enforced Niko's relevant lease obligations and the Elaimys' personal

guarantee in Peyton's favor on summary judgment. Niko's and the Elaimys contend the

court erred in rejecting their challenges to Peyton's standing and real party in interest

status, and in deciding no genuine issue of material fact remains regarding the amount

of Niko's default, and the amount, if any, to credit or pay Niko's for the value of personal

property Peyton retained under its landlord's lien.

Considering Peyton's reversionary estate in the leased property, we conclude the trial court correctly acknowledged Peyton's status as de facto landlord. But because Peyton did not receive a contractual assignment of rights for the lease or guarantee, it may enforce solely those lease covenants running with the land. While Niko's relevant lease obligations run with the land, the Elaimys' personal guarantee does not. For this reason, we conclude the court erred by enforcing the guarantee in Peyton's favor on summary judgment. We decide genuine issues of material fact remain regarding both the amount of unpaid rent and the value of retained personal property. Therefore, the trial court erred in granting Peyton summary judgment on the rent default and landlord's lien amounts. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On May 20, 2002, Niko's signed a 10-year agreement leasing commercial property from Pacific Security Financial Inc. and promising to continuously occupy the premises while operating it as a restaurant. Niko's promised to pay escalating rent totaling, as relevant here, $7,933 monthly beginning in September 2010 and $8,171 monthly beginning in September 2011. Additionally, Niko's promised to pay a five percent late charge for rent due but unpaid by the fifth day of each month. In the same document, the Elaimys personally guaranteed to pay for Niko's default. Later, Peyton bought the building from Pacific Security.

Niko's did not pay the full $7,933 monthly rent in February 2011 and vacated the premises in March 2011. At the time, Niko's owed additional money to Washington

2

Trust Bank and the Internal Revenue Service (IRS). As a secured creditor, Washington Trust held a security interest in Niko's "inventory, chattel paper, accounts, equipment, general intangibles, and fixtures." Clerk's Papers (CP) at 60. As a priority lienholder, the IRS held a tax lien on all Niko's property, including "[f]ixtures, furnishings, and equipment." CP at 63.

On March 11, 2011, Peyton sued Niko's for unlawful detainer. Ten days later, Peyton and Niko's signed a stipulated eviction order stating,

> [Niko's] agrees to surrender the Property to [Peyton] together with all non-perishable inventory (specifically including all wine and other alcoholic beverages), restaurant equipment and trade fixtures. [Niko's] specifically recognizes [Peyton]'s claim to a lien on such inventory, equipment and fixtures pursuant to RCW 60.72.010. [Niko's] also acknowledges the security interest of Washington Trust . . . in such property identified in this paragraph, and that [Peyton] and Washington Trust . . . will be negotiating in the future over the disposition of such property. The IRS makes claim to this property as well.

CP at 54.

After negotiations, Peyton took some restaurant equipment and trade fixtures, which Niko's and the Elaimys later valued at $110,235, while Washington Trust took some inventory and the IRS relinquished its tax lien. Peyton relet the premises, including the equipment and fixtures, for rent beginning at $10,000 monthly in November 2011—a disputed start date for the replacement lease. Niko's and the Elaimys unsuccessfully requested Peyton credit or pay the value of the equipment and fixtures.

On May 20, 2011, Peyton sued Niko's and the Elaimys for breach of the lease and foreclosure of a landlord's lien in the equipment and fixtures. Peyton moved

3

successfully for summary judgment totaling $104,558.08 plus costs. Niko's and the Elaimys appealed after moving unsuccessfully for reconsideration.

STANDARD OF REVIEW

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Mahoney v. Shinpoch*, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper if the records on file with the trial court show "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). A genuine issue is one upon which reasonable people may disagree; a material fact is one controlling the litigation's outcome. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We construe all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). And, we consider solely evidence and issues the parties called to the trial court's attention. RAP 9.12.

Initially, the moving party bears the burden of proving no genuine issue of material fact exists. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). Then, the burden shifts and the nonmoving party must present admissible evidence showing a genuine issue of material fact exists. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *see* CR 56(e). The sections below address each contention separately.

4

ANALYSIS

A. Standing and Real Party in Interest

The issue is whether the trial court erred in summarily deciding Peyton had standing and was the real party in interest to enforce Niko's relevant lease obligations and the Elaimys' personal guarantee. Niko's and the Elaimys contend this decision is incorrect because Pacific Security did not assign the lease or guarantee to Peyton and the guarantee does not run with the land. We partly agree.

"The concepts of standing and CR 17(a) real party in interest are often interchanged by our courts. Standing refers to the demonstrated existence of 'an injury to a legally protected right.' 'The real party in interest is the person who possesses the right sought to be enforced.'"[1] *Riverview Cmty. Grp. v. Spencer & Livingston*, 173 Wn. App. 568, 576, 295 P.3d 258 (footnote omitted) (citations omitted) (quoting *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 176 n.2, 982 P.2d 1202 (1999)) (citing Philip A. Trautman, *Joinder of Claims and Parties in Washington*, 14 GONZ. L. REV. 103, 109 (1978)), *review granted*, 178 Wn.2d 1009 (2013). "These issues, although analytically distinct, are intertwined . . . ." *Id.* Therefore, we address these issues simultaneously.

Where a landlord conveys a reversionary estate in leased premises without contractually assigning rights under the lease, the grantee may enforce solely those

---

[1] CR 17(a) partly provides,

Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest. . . .

lease covenants running with the land, or, more accurately, with the reversionary estate. 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 6.68, at 428 (2d ed. 2004); 2 WASH. STATE BAR ASS'N, WASHINGTON REAL PROPERTY DESKBOOK § 17.11(2), at 17-68 (4th ed. 2009); Hiram H. Lesar, *Landlord and Tenant, in* 1 AMERICAN LAW OF PROPERTY § 3.59, at 307, § 3.63, at 314 (A. James Casner ed., 1952); William B. Stoebuck, *Running Covenants: An Analytical Primer*, 52 WASH. L. REV. 861, 869 (1977); William B. Stoebuck, *The Law Between Landlord and Tenant in Washington* (pt. 2), 49 WASH. L. REV. 1013, 1054, 1059 (1974). The benefits of a lease covenant run with an estate if they touch and concern the estate. *See Rodruck v. Sand Point Maint. Comm'n*, 48 Wn.2d 565, 574, 295 P.2d 714 (1956); *City of Seattle v. Fender*, 42 Wn.2d 213, 218, 254 P.2d 470 (1953); *Mullendore Theatres, Inc. v. Growth Realty Investors Co.*, 39 Wn. App. 64, 65, 691 P.2d 970 (1984). The benefits of a lease covenant touch and concern an estate if they are connected with the use and enjoyment of the estate, being so related as to enhance the value of and confer a benefit upon the estate. *See Rodruck*, 48 Wn.2d at 575; *Fender*, 42 Wn.2d at 218; *Mullendore Theatres*, 39 Wn. App. at 66.

By selling the building, Pacific Security conveyed to Peyton a reversion in leased premises. Our record contains no evidence Pacific Security contractually assigned to Peyton any rights under the lease or guarantee. Thus, Peyton may enforce solely those lease covenants running with the reversion.

While the Elaimys' personal guarantee is technically a collateral agreement governed by contract law, *see Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134

6

Wn.2d 692, 699, 707, 952 P.2d 590 (1998); *Robey v. Walton Lumber Co.*, 17 Wn.2d 242, 255, 135 P.2d 95 (1943), we may entertain their request to analyze it as a real covenant governed by property law because it was created in the conveyance of a leasehold, arguably concerned real property, and was not the subject of a contractual assignment of rights, *see generally Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 690, 974 P.2d 836 (1999) (stating real covenants are "'promises relating to real property that are created in conveyances or other instruments'" (quoting 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.01[2], at 60-5 (1998))); 17 STOEBUCK & WEAVER, *supra*, §§ 3.1-.2, at 123-26 (explaining the definition and creation of real covenants); Reno, *supra*, § 9.1, at 335-36 (same); Stoebuck, *supra*, 52 WASH. L. REV. at 863-64 (same).

To facilitate such analysis, we must assume, arguendo, that Pacific Security needed no horizontal privity of estate with the Elaimys for the *benefit* of the guarantee to run with the reversion. *Compare* RESTATEMENT (FIRST) OF PROPERTY § 548 (1944) (specifying the original covenanting parties need no horizontal privity of estate for the benefit of a real covenant to run with the land), *and* STOEBUCK & WEAVER, *supra*, § 3.6, at 139 (discussing support for the *Restatement*'s approach), *and* 1 WASHINGTON REAL PROPERTY DESKBOOK § 8.2(3)(d), at 8-13 to -14 (same), *and* Reno, *supra*, § 9.11, at 370 (same), *and* Stoebuck, *supra*, 52 WASH. L. REV. at 880-81 (same), *with Harbeck v. Sylvester*, 13 Wend. 608 (N.Y. 1835) (holding the benefit of a personal guarantee, created in the conveyance of a leasehold, to pay for a tenant's default, did not run with the reversion because the landlord lacked horizontal privity of estate with the guarantor), *and Walsh v. Packard*, 165 Mass. 189, 42 N.E. 577 (1896) (Holmes, J.,

7

holding the same as *Harbeck*), *and Leighton v. Leonard*, 22 Wn. App. 136, 589 P.2d 279 (1978) (reciting the requirement that the original covenanting parties needed horizontal privity of estate for the benefits and burdens of a real covenant to run with the fee estates of their respective parcels, but misapplying the requirement in concluding the parties had such privity by virtue of a prior conveyance unrelated to the covenant), *and Lake Arrowhead Cmty. Club, Inc. v. Looney*, 112 Wn.2d 288, 294-95, 770 P.2d 1046 (1989) (dictum quoting *Leighton* and generalizing, in a case involving burdens, that the original covenanting parties need horizontal privity of estate for a real covenant to run with the land).

It is well settled that the benefit of Niko's promise to pay rent is incidental to, and therefore touches and concerns the reversion, allowing Peyton to enforce the promise for rent due after conveyance. *See* 17 STOEBUCK & WEAVER, *supra*, § 6.69, at 430; 2 WASHINGTON REAL PROPERTY DESKBOOK § 17.1(3)(c), at 17-71 to -72; Lesar, *supra*, § 3.59, at 307, § 3.63, at 314; Stoebuck, *supra*, 52 WASH. L. REV. at 871; Stoebuck, *supra*, 49 WASH. L. REV. at 1054, 1060; *see also Muscatel v. Storey*, 56 Wn.2d 635, 639, 354 P.2d 931 (1960); *King County v. Odman*, 8 Wn.2d 32, 36, 111 P.2d 228 (1941); *Kneeland Inv. Co. v. Aldrich*, 63 Wash. 609, 612, 116 P. 264 (1911). And clearly, Niko's promise to continuously occupy the premises while operating it as a restaurant touches and concerns the land in a physical sense, allowing Peyton to enforce the promise upon Niko's default. *See* 17 STOEBUCK & WEAVER, *supra*, § 3.3, at 132-33; Russell R. Reno, *Covenants, Rents and Public Rights, in* 2 AMERICAN LAW OF PROPERTY, *supra*, § 9.4, at 344-45; Stoebuck, *supra*, 52 WASH. L. REV. at 869-70, 872.

On the other hand, we doubt whether the benefit of the Elaimys' personal guarantee touches and concerns the reversion to allow Peyton to enforce the guarantee. *See generally* 17 STOEBUCK & WEAVER, *supra*, § 3.3, at 134 (discussing the difficulty with promises to pay money); Reno, *supra*, § 9.4, at 347 (same); Stoebuck, *supra*, 52 WASH. L. REV. at 870-72 (same). Peyton cites no supporting legal authority addressing this specific issue. Thus, we conclude the benefit of the guarantee does not run with the reversion because, as a promise to pay money, the guarantee does not "restrict the use of the funds to the benefit of the property." *Mullendore Theatres*, 39 Wn. App. at 66 (following this reasoning to hold the burden of a landlord's promise to refund a security deposit did not run with the reversion). Therefore, Peyton could not enforce the guarantee on summary judgment, even though the lease purports to fully benefit all Pacific Security's successors in interest. *See id.*; Reno, *supra*, § 9.4, at 341-42; Stoebuck, *supra*, 52 WASH. L. REV. at 869.

Peyton unpersuasively argues it could enforce the guarantee on summary judgment because it was one of the terms included in the lease attached to the amended complaint, Mr. Elaimy admitted that agreement was a true copy of the lease between Niko's and Peyton, and Niko's generally acquiesced in a landlord-tenant relationship with Peyton under those terms. Again, Peyton cites no supporting legal authority for this estoppel or ratification-like argument. *See Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 160, 795 P.2d 1143 (1990) (stating this court will not address an issue a party fails to support with "adequate, cogent argument and briefing" (citing *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989)); RAP

9

10.3(a)(6), (b) (providing a respondent's brief should contain "argument [on] the issues presented for review, together with citations to legal authority").

In sum, the trial court did not err in deciding Peyton has standing and is the real party in interest to enforce Niko's promises to pay rent and continuously occupy the premises while operating it as a restaurant. But the trial court erred in granting Peyton standing and real party in interest status to enforce the Elaimys' personal guarantee on summary judgment. Peyton does not possess the rights arising from that guarantee, unlike the other lease covenants. As a matter of law, Peyton was not entitled to summary judgment against the Elaimys. But because the Elaimys did not themselves move for summary judgment against Peyton, we stop short of dismissing them from this case. While we limit our remaining analysis to Niko's potential liability, we will allow Peyton, on remand, to present additional facts and arguments, consistent with this opinion, regarding the Elaimys' potential liability.

## B. Default Amount

The issue is whether the trial court erred in summarily awarding Peyton rent default damages. Niko's contends a genuine issue of material fact exists on the amount of its default because it disputed Peyton's numbers at the trial court.

Where a tenant fails to pay rent under the lease, the landlord may, at common law, sue for breach and recover the actual amount of unpaid rent. 17 STOEBUCK & WEAVER, *supra*, § 6.44, at 383; 2 WASHINGTON REAL PROPERTY DESKBOOK § 17.7(1)(b), at 17-44; Stoebuck, *supra*, 49 WASH. L. REV. at 1018. Where a tenant defaults under other lease obligations, the landlord may, at common law, sue for breach and recover

10

damages, including reasonably foreseeable consequential damages flowing from the

breach. *Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 105, 114,

702 P.2d 459 (1985); *Olson v. Scholes*, 17 Wn. App. 383, 391-92, 563 P.2d 1275

(1977).

Peyton alleged Niko's defaulted by "fail[ing] to pay rent and other charges,"

"ceas[ing] operations at the Premises," and "subsequently vacat[ing] the Premises."[2]

CP at 2. Additionally, Peyton alleged Niko's was "responsible for all other consequential

damages arising from [its] default, including, but not limited to, cleaning costs, charges

to secure the premises and dispose of property left on the Premises, expenses to

inventory and appraise such property left on the Premises, insurance on the property,

together with all fees, costs and leasing commissions to re-let the Premises."[3] CP at 2.

At the trial court, the parties disputed the amount of rent Niko's owes for March,

September, and October 2011. Peyton argued Niko's owes $7,933 for each of those

months. Niko's argued it owes $3,966.50 for March, $8,171.00 for September, and

nothing for October. For March, Peyton's automated ledger did not reflect the amount

Niko's swears it paid. For September, Peyton's automated ledger did not reflect the

scheduled rent increase. And for October, Niko's denied responsibility for rent because

---

[2] Notably, Niko's promised to perform its lease obligations and remain liable for its default even if Peyton reentered the premises following such default.

[3] Niko's argues Peyton may not recover these consequential damages because the lease does not provide them. Niko's argument is unpersuasive because it ignores remedies available at common law and does not dispute these damages were reasonably foreseeable, flowing from the breach. Therefore, Peyton may recover these consequential damages.

the replacement tenant began occupying the premises that month even though Peyton did not require the replacement tenant to pay rent until the next month.

Reasonable people could disagree regarding how much Niko's failed to pay. Thus, a genuine issue exists on the extent of Niko's liability for breach of the lease. This fact is material because it controls the litigation's outcome. Viewing all evidence and reasonable inferences in the light most favorable to Niko's, a genuine issue of material fact exists on the amount of its default. Therefore, the trial court erred in granting Peyton summary judgment for the unpaid rent amount.

### C. Landlord's Lien

The issue is whether the trial court erred in summarily awarding Peyton damages based on its landlord's lien. Niko's contends Peyton may not claim a landlord's lien and must instead credit or pay the value of the equipment and fixtures because it did not follow through with foreclosure proceedings and converted this personal property.

By statute, "[a]ny person to whom rent may be due . . . shall have a lien for such rent upon personal property which has been used or kept on the rented premises by the tenant." RCW 60.72.010. But "[s]uch liens shall not be for more than two months' rent due" and "[n]o lien may be enforced for any rent or any installment thereof which has been due for more than two months at the time of the commencement of an action to foreclose such liens." *Id.* A landlord's lien "may be foreclosed as provided in chapter 60.10 RCW." RCW 60.72.040; *see also* RCW 60.10.020, .023, .030 (providing the option of summary or judicial foreclosure proceedings). But if a tenant voluntarily surrenders possession of its personal property as payment for rent due under the lease,

12

the landlord may enjoy the benefits of a landlord's lien without initiating foreclosure proceedings. *M.H.B. Co. v. Desmond*, 151 Wash. 344, 346, 353, 275 P. 733 (1929); *Kohout v. Brooks*, 185 Wash. 4, 10, 52 P.2d 905 (1935); 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 4.171, at 455 (1998); RAY ANDREWS BROWN, THE LAW OF PERSONAL PROPERTY § 14.1, at 446 (3d ed. 1975).

Under the stipulated eviction order, Niko's acknowledged it failed to pay rent due under the lease. Then, Niko's "agree[d] to surrender" all restaurant equipment and trade fixtures to Peyton while "specifically recogniz[ing] [Peyton]'s claim to a lien on such . . . equipment and fixtures pursuant to RCW 60.72.010." CP at 54. Upon this evidence, reasonable people could solely find Niko's voluntarily surrendered possession of its equipment and fixtures to Peyton as payment for rent due under the lease. Therefore, Peyton may enjoy the benefits of a landlord's lien without initiating foreclosure proceedings. Out of the equipment and fixtures, Peyton may satisfy its lien for the $15,866 in rent due for April and May 2011. Presumably, Peyton must credit or pay Niko's any surplus sale proceeds or unsold personal property, and must do so within a reasonable time, otherwise Peyton may be liable for conversion. *See* RCW 60.10.030(2), .060; *Kohout*, 185 Wash. at 9-11; *Paris Am. Corp. v. McCausland*, 52 Wn. App. 434, 443-44, 759 P.2d 1210 (1988); *cf.* RCW 60.10.023; RCW 62A.9A-602(5), -608(a)(4), -615(d)(1); BROWN, *supra*, § 14.1, at 446, § 14.6, at 461-62, § 14.9, at 466-68.

At the trial court, the parties disputed the presence and value of any surplus. Peyton argued "much of or most of the restaurant equipment was provided and owned

by Pacific Securit[y] as the owner/landlord when the lease commenced." CP at 125.

Peyton identified a few of those items but noted "there may be others." CP at 125.

Without listing examples, Peyton claimed it "retained very little . . . equipment . . . that

was not already part of the leased premises by way of original ownership or it becoming

attached to the realty [as fixtures]." CP at 125. Additionally, Peyton argued whatever

equipment and fixtures it retained had "little value." CP at 122. Niko's argued it had title

to all the equipment and fixtures, valued at $110,235 in an appraisal Peyton attached to

the replacement lease.

Reasonable people could disagree regarding what, if anything, Peyton must

credit or pay Niko's. Thus, a genuine issue exists on the disposition of the equipment

and fixtures between Peyton and Niko's. This fact is material because it controls the

litigation's outcome. Viewing all evidence and reasonable inferences in the light most

favorable to Niko's, a genuine issue of material fact exists on the presence and value of

any surplus. Therefore, the trial court erred in granting Peyton summary judgment for

amounts retained under its landlord's lien.

### D. Attorney Fees and Costs

Each party requests an award of reasonable attorney fees and costs. RAP

18.1(a) authorizes such an award if provided by applicable law. Both RCW 4.84.330

and the lease authorize such an award to the party prevailing in an enforcement action.

Niko's and the Elaimys mainly prevail here. Because litigation is ongoing, we leave to

the trial court the task of determining an appropriate overall award at the conclusion of

14

No. 30840-5-III
*Peyton Bldg. LLC v. Niko's Gourmet Inc.*

the trial court proceedings.

Affirmed in part. Reversed in part. Remanded for further proceedings.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

15