**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LACEY MARKETPLACE ASSOCIATES II LLC, a Washington limited liability company and BURLINGTON RETAIL, LLC, a Washington limited liability company, | No.    15-35571 |
| | D.C. No. 2:13-cv-00383-JLR |
| Plaintiffs-Appellees, | MEMORANDUM* |
| v. | |
| UNITED FARMERS OF ALBERTA COOPERATIVE LIMITED, a foreign association, | |
| Defendant-Appellant, | |
| SPORTSMAN'S WAREHOUSE, INC., | |
| Defendant-Appellee. | |

| | |
|---|---|
| LACEY MARKETPLACE ASSOCIATES II LLC, a Washington limited liability company and BURLINGTON RETAIL, LLC, a Washington limited liability company, | No.    15-35658 |
| | D.C. No. 2:13-cv-00383-JLR |
| Plaintiffs-Appellants, | |

---

         *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

UNITED FARMERS OF ALBERTA
COOPERATIVE LIMITED, a foreign
association; et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted December 5, 2017
Seattle, Washington

Before: O'SCANNLAIN, TALLMAN, and WATFORD, Circuit Judges.

**1.** United Farmers of Alberta Cooperative Limited (UFA) waived its right to

challenge the district court's grant of summary judgment to Sportsman's

Warehouse (Sportsman's) on the tortious interference claim. Arguments that a

party failed to raise below are not necessarily waived when, as here, the district

court considered those same arguments below. *See Tarabochia v. Adkins*, 766 F.3d

1115, 1128 n.12 (9th Cir. 2014). But UFA did not just fail to oppose Sportsman's

motion for summary judgment. Rather, it made the same arguments in its own

defense that Sportsman's made in support of its summary judgment motion. UFA

even joined a different part of Sportsman's motion. UFA cannot reverse course

now that it has admitted liability and argue directly against the position it took in

the district court. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1074 n.7 (9th Cir. 2016). Thus, the grant of summary judgment to Sportsman's on the tortious interference claim is affirmed.

**2.** The district court erred in granting judgment as a matter of law to Sportsman's on the Uniform Fraudulent Transfer Act (UFTA) claim. The jury did not specify whether it found the transfer at issue to be actually or constructively fraudulent, or whether it found Sportsman's liable as a third-party beneficiary of the transfer between Wholesale and UFA. Because there was a valid legal basis for finding actual fraud on Sportsman's part, judgment as a matter of law was inappropriate regardless of the validity of the legal basis for finding constructive fraud or liability as a third-party beneficiary. *See* Fed. R. Civ. P. 50(a)(1); *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1067–69 (9th Cir. 2011).

There was sufficiently clear and satisfactory evidence of actual fraud for a reasonable jury to conclude that Sportsman's transacted with Wholesale with the "actual intent to hinder, delay, or defraud" Lacey Marketplace Associates II and Burlington Retail (the Landlords). Wash. Rev. Code § 19.40.041(1)(a); *see Clayton v. Wilson*, 227 P.3d 278, 283 (Wash. 2010). Fraudulent intent can be established when as few as seven of the eleven enumerated factors that suggest fraudulent intent are present. *See* Wash. Rev. Code § 19.40.041(2)(a)–(k);

*Douglas v. Hill*, 199 P.3d 493, 497 (Wash. Ct. App. 2009); *see also Clayton*, 227 P.3d at 283–84.

The district court held that only three factors were present. *See* Wash. Rev. Code § 19.40.041(2)(e), (i), (j). But, viewing the evidence in the light most favorable to the Landlords, a reasonable jury could conclude that at least four additional factors were also present. *See First Nat'l Mortg.*, 631 F.3d at 1067–68. First, UFA and Wholesale were insiders, and Sportsman's knew that the Master Transaction Agreement (MTA) required that its payment to Wholesale would go to UFA. *See* Wash. Rev. Code § 19.40.041(2)(a). Second, UFA and Sportsman's gave the Landlords late and vague notice of the MTA, which had the effect of concealing the transfer for a time. *See* Wash. Rev. Code § 19.40.041(2)(c). Third, litigation was pending by the time the MTA closed and Sportsman's transacted with Wholesale. *See* Wash. Rev. Code § 19.40.041(2)(d); *Clayton*, 227 P.3d at 284. Finally, Sportsman's helped design the transaction so that Wholesale's assets would be removed from the Landlords' reach. *See* Wash. Rev. Code § 19.40.041(2)(g).

This evidence was sufficient to support a finding of actual fraud, so we reverse the district court's grant of judgment as a matter of law on the UFTA claim against Sportsman's. Because no party challenged the district court's conditional

grant of a new trial to Sportsman's on the UFTA claim, we leave that alternative ruling undisturbed.

**3.** The district court correctly held that the Landlords' damages for lost rent and retenanting costs did not need to be offset by the rent the Landlords received from the replacement tenants. Two principles of Washington law establish that no such offset would have been appropriate here, whether or not the Landlords terminated their leases with Wholesale. First, under Washington law, a "defaulting tenant is not entitled to a credit for the excess rent the landlord receives from a subsequent tenant toward the unpaid rent owed by the original tenant for the period of time the property was vacant." *Hargis v. Mel-Mad Corp.*, 730 P.2d 76, 81 (Wash. Ct. App. 1986). Second, the landlord, and not the defaulting tenant, should receive any benefit of the tenant's breach. *Id.* In light of these principles, the district court properly denied a "surplus rent" offset because the Landlords received damages only for the period during which the properties sat vacant.

**4.** The district court correctly held that changes in the value of the Landlords' properties did not affect the damages owed to the Landlords. The Washington Supreme Court's statement that the measure of damages from a breach of lease is "the difference in the value of the property independent of the lease" must be viewed in light of the court's application of that rule. *See Family Med.*

*Bldgs., Inc. v. Dep't of Soc. & Health Servs.*, 702 P.2d 459, 464 (Wash. 1985). In

*Family Medical Buildings*, the court permitted the landlord to recover only the lost

rent and retenanting costs without any mention of the property value. *Id.*; *see also*

*Peyton Bldg., LLC v. Niko's Gourmet, Inc.*, 323 P.3d 629, 635 (Wash. Ct. App.

2014). In practice, Washington law does not require breach-of-lease damages to be

calculated with reference to property value. The district court's denial of a

property value offset is affirmed.

**5.** The district court did not abuse its discretion in holding that the

Landlords were not entitled to prejudgment interest. Prejudgment interest is

available only if the tort or contract damages were (1) liquidated or (2)

unliquidated but "determinable by reference to a fixed contractual standard,

without reliance on opinion or discretion." *Forbes v. Am. Bldg. Maint. Co. West*,

240 P.3d 790, 793 (Wash. 2010); *see State Dep't of Corr. v. Fluor Daniel, Inc.*,

161 P.3d 372, 375 (Wash. 2007) (rule applies to tort and contract damages).

Damages that depend on a jury's determination of "reasonableness" are not

liquidated, even if calculated from documented expenses. *See Scoccolo Constr.,*

*Inc. v. City of Renton*, 145 P.3d 371, 377 (Wash. 2006); *Harris v. Drake*, 65 P.3d

350, 365 (Wash. Ct. App. 2003). Here, as the jury instructions reflect, the damages

for the breach of contract, tortious interference, and UFTA claims all depended on

an exercise of the jury's discretion, which precludes an award of prejudgment interest.

6. The Landlords' request for judicial notice is **DENIED**. UFA's motion to strike is **DENIED** as moot.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

The parties shall bear their own costs.