2009 ND 153

**Brian BEETER, Dennis Beeter, and Larry Beeter, Plaintiffs and Appellees**

v.

**SAWYER DISPOSAL LLC, Defendant and Appellant.**

**No. 20080346.**

Supreme Court of North Dakota.

Aug. 18, 2009.

Nevin Van de Streek, Eaton, Van de Streek & Ward, Minot, N.D., for plaintiffs and appellees.

Whitton E. Norris, III (argued), Davis, Malm & D'Agostine, P.C., Boston, MA, and Thomas D. Kelsch (appeared), Kelsch, Kelsch, Ruff & Kranda, Mandan, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶1] Sawyer Disposal, LLC, appeals from a district court summary judgment awarding damages to Brian Beeter, Dennis Beeter, and Larry Beeter for violation of a deed covenant providing for payment to the Beeters of a portion of waste disposal fees generated upon certain property. We reverse and remand, concluding the covenant did not run with the land and the district court erred in concluding the covenant was binding upon subsequent purchasers of the property.

I

[¶2] In 1990, the Beeters and Municipal Services Corporation entered into an "Option to Purchase Real Estate" whereby the Beeters agreed to sell to Municipal Services a 940–acre tract of land containing a landfill known as Echo Mountain. The written option specified:

The PURCHASE PRICE to be paid by MSC and accepted by SELLERS for said PREMISES under this Option to Purchase shall be Three Hundred Thousand Dollars ($300,000.00), plus six percent (6%) of the total gross revenue derived from MSC's operating of the premises from all waste disposal activity including tipping fees, solidification, and/or treatment fees, provided that, however, in no event shall such payment be less than $1.20 per cubic yard of

waste disposed of in the Facility by MSC. Reasonable revenues received by MSC from transportation or related sources shall be excluded in computing said six percent (6%).

The option further provided:

In the event this Option to Purchase Real Estate is exercised by MSC, in addition to the purchase price as set forth in Article (1)(b), MSC or assigns agrees to pay Seller six percent (6%) of the total gross revenue derived from any expansion or extension of MSC's operation of a waste disposal facility, whether by extension of existing permits or otherwise, within a five mile radius of PREMISES. The right to receive the six percent (6%) of the total gross revenue derived from the operation of a waste disposal facility is perpetual and a covenant running with the real estate.

[¶ 3] Municipal Services exercised the option and purchased the property. The warranty deed from the Beeters to Municipal Services included the following provisions:

In addition to the purchase price first party shall receive six percent (6%) of the total gross revenue derived and collected from second parties [sic] operating of the premises from all waste disposal activity including tipping fees, solidification, and/or treatment fees, provided that, however, in no event shall such payment be less than $1.20 per cubic yard of waste disposed of in the facility by second party. Reasonable revenues received by second party from transportation or related sources shall be excluded in computing said six percent (6%).

In addition second party or assigns shall pay to first party six percent (6%) of the total gross revenue derived from any expansion or extension of second parties' operation of a waste disposal facility, whether by extension of existing permits or otherwise, within a five mile radius of the premises.

The right to receive the six percent (6%) of the total gross revenue derived from the operation of a waste disposal facility is perpetual and a covenant running with the real estate.

In 1992 and 1996, the Beeters and Municipal Services entered into agreements amending the method of calculating the fees owed to the Beeters by Municipal Services for waste disposal activities on the Echo Mountain property.

[¶ 4] In 2000, after a series of mergers and corporate restructurings, Municipal Services' parent company and all of its subsidiaries filed for bankruptcy protection. In 2002, Clean Harbors, Inc., purchased the Echo Mountain property through the bankruptcy proceedings and transferred title to the property to Sawyer, its indirect subsidiary. As part of the bankruptcy purchase, Clean Harbors agreed to perform executory contracts with third parties for up to six months after the closing date of the purchase. Accordingly, Clean Harbors made monthly payments to the Beeters calculated under the 1996 agreement until April 2003. Clean Harbors thereafter sent written notice to the Beeters that no further payments would be made.

[¶ 5] The Beeters brought this action against Sawyer, seeking (1) an accounting of waste disposal activities at Echo Mountain after May 2003, (2) a money judgment against Sawyer based upon the accounting, and (3) a declaratory judgment confirming their right to receive perpetual payments under the covenant in the deed. The parties filed a joint motion for summary judgment and entered into a written stipulation of undisputed facts. The district court held that the covenant in the deed was not a covenant running with the land, which

would be binding upon subsequent purchasers. The court, however, then concluded:

> In the final analysis, the Court finds, by the greater weight of the evidence, that—whatever term one wants to use to describe the "six percent (6%) provision"—the Beeters and MSC intended that the Beeters were to receive six percent (6%) of the gross revenues from waste disposal activities conducted at Echo Mountain (or within a five-mile radius of that facility) *for as long as such activities were* conducted *there,* no matter who, or what entity, was actually conducting those activities.

The court held that the covenant was enforceable against Sawyer as the successor to Municipal Services' interest. Following an accounting, judgment was entered in favor of the Beeters in the amount of $618,998.62 plus interest. Sawyer appealed.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

■ [¶ 7] In the option agreement and the deed conveying the Echo Mountain property, the Beeters and Municipal Services purported to create a perpetual covenant running with the land requiring the six-percent payments to the Beeters. The district court concluded that the covenant did not run with the land, but nevertheless held that the intent of the Beeters and Municipal Services was controlling and therefore the covenant was enforceable against Sawyer.

[¶ 8] Real property located within this state is governed by the law of this state.

N.D.C.C. § 47–04–01. Covenants running with the land are defined in N.D.C.C. § 47–04–24:

> Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they personally had entered into them. Such covenants are said to run with the land.

Under N.D.C.C. § 47–04–25, "[t]he only covenants which run with the land are those specified in this chapter and those which are incidental thereto." Section 47–04–26, N.D.C.C., identifies covenants that will run with the land under North Dakota law:

> All covenants contained in a grant of an estate in real property, which are made for the direct benefit of the property or some part of it then in existence, run with the land. Such covenants include covenants:
>
> 1. Of warranty;
> 2. For quiet enjoyment;
> 3. For further assurance on the part of a grantor; or
> 4. For the payment of rent, taxes, or assessments upon the land on the part of a grantee.

■ [¶ 9] The distinction between a covenant running with the land, also known as a real covenant, and a personal covenant has been explained:

> For purposes of the distinction between real covenants and personal covenants, a covenant may "run with the land," or may simply be a matter between the grantor and purchaser. If the covenant does not touch or concern the occupation or enjoyment of the land, it is the collateral and personal obligation of the grantor or lessor and does not run with the land.

21 C.J.S. *Covenants* § 32 (2006) (footnotes omitted). As explained in *Barton v. Fred Netterville Lumber Co.*, 317 F.Supp.2d 700, 704 (S.D.Miss.2004), "if a covenant or deed restriction benefits the grantor personally, and serves no real benefit to the land, then the covenant is personal in nature and does not 'run with the land' upon a subsequent sale of the property." *See also Mullendore Theatres, Inc. v. Growth Realty Investors Co.*, 39 Wash.App. 64, 691 P.2d 970, 971 (1984) (a covenant which is not "so related to the land as to enhance its value and confer a benefit upon it" does not run with the land, and "is a collateral and personal obligation").

[¶ 10] Thus, if a covenant contained in a deed does not directly benefit the land as required by N.D.C.C. § 47–04–26, it is personal and is enforceable only between the original parties to the deed. *See Anderson v. Marshall–Malaise Lumber Co.*, 66 N.D. 216, 219, 263 N.W. 721, 723 (1935). It is generally recognized that a covenant to pay for land in a particular way is a personal covenant and does not run with the land. *See* 20 Am.Jur.2d *Covenants* § 30 (2005). The covenant in the deed in this case requiring payment of six percent of gross revenues from waste disposal operations does not in any manner benefit the land. It is a purely personal benefit to the Beeters and appears, in fact, to be part of the consideration and payment for the land. The district court correctly concluded that the covenant did not benefit the land and did not run with the land.

[¶ 11] The district court, however, ultimately concluded:

> In the final analysis, the Court finds, by the greater weight of the evidence, that—whatever term one wants to use to describe the "six percent (6%) provision"—the Beeters and MSC intended that the Beeters were to receive six percent (6%) of the gross revenues from waste disposal activities conducted at Echo Mountain (or within a five-mile radius of that facility) *for as long as such activities were* conducted *there,* no matter who, or what entity, was actually conducting those activities.

[¶ 12] The essence of the district court's holding is that, regardless of the label placed upon the six-percent provision, the original parties' intent will be controlling on the question whether the covenant is binding on subsequent purchasers. This conclusion is in direct contradiction to the settled principle that the parties' intent, no matter how clearly expressed, cannot make a personal covenant run with the land and bind subsequent purchasers:

> Even though the parties to the original deed expressly state in the instrument that the covenant will run with the land, such a recital is insufficient to render the covenant enforceable against subsequent grantees if the other requirements for the running of an affirmative covenant are not met. The rule is settled that "[r]egardless of the intention of the parties, a covenant will run with the land and will be enforceable against a subsequent purchaser of the land at the suit of one who claims the benefit of the covenant, only if the covenant complies with certain legal requirements."

*Eagle Enters., Inc. v. Gross,* 39 N.Y.2d 505, 384 N.Y.S.2d 717, 349 N.E.2d 816, 818–19 (1976) (quoting *Neponsit Prop. Owners' Ass'n v. Emigrant Indus. Sav. Bank,* 278 N.Y. 248, 15 N.E.2d 793, 795 (1938)); *see also Mullendore Theatres,* 691 P.2d at 972 ("[i]ntent is not enough to make a running covenant out of one which is by its nature personal"); 1 Basil Jones, Tiffany on Real Property § 126 (3d ed. 1939); 20 Am.Jur.2d *Covenants* § 20

(2005). As summarized in 21 C.J.S. *Covenants* § 34 (2006): "An agreement between the parties, however strongly expressed, cannot cause a covenant to be attached to the land if it is not of such a nature that the law permits it to be attached."

[¶ 13] The original intent of the Beeters and Municipal Services in attempting to create a perpetual covenant running with the land, no matter how clearly expressed, does not make the covenant binding upon subsequent purchasers. The covenant for payment of six percent of gross revenues was collateral to the property and personal to the Beeters and Municipal Services. The Beeters' remedy, if any, was against Municipal Services.

[¶ 14] We conclude the district court erred in holding that the intent of the original parties to the deed was controlling and created a perpetual covenant which was binding upon Sawyer as the successor to Municipal Services' interest.

### III

[¶ 15] The Beeters suggest several novel theories which they claim support their contention that the covenant for perpetual payment of six percent of gross revenues generated by waste disposal was binding upon Sawyer. They argue the covenant can be treated as a royalty interest in waste disposal or can be characterized as "perpetual rent," "ground rent," or "profit a prendre."

[¶ 16] The Beeters have not cited a single case holding that a similar percentage payment included in a covenant in a deed was enforceable against subsequent purchasers as a royalty interest, perpetual rent, ground rent, or profit a prendre. The Beeters invite us, however, to create a new real property right recognizing a party's interest in collecting payments under such a covenant. The Beeters are simply trying to force this "square peg" deed covenant into "round hole" theories in an attempt to bind Sawyer, when the dispositive issue is whether it is a covenant which runs with the land. It is not, and the Beeters' attempt to "shoehorn" this fact situation into other inapplicable legal theories is unavailing.

[¶ 17] Particularly troublesome in this regard is the covenant's inclusion of a six-percent payment for waste activities occurring within five miles of the Echo Mountain property. The Beeters advance no plausible explanation how a supposed "reservation" of a "royalty interest" or other property right in waste disposal could extend to property beyond the land conveyed in the deed, and in which the Beeters had no interest.

[¶ 18] We decline the Beeters' invitation to recognize a new property right in the nature of a royalty interest, perpetual rent, ground rent, or profit a prendre arising from a deed covenant providing for a percentage payment of waste disposal revenues.

### IV

[¶ 19] The Beeters also argue that even if the covenant is personal, Sawyer assumed Municipal Services' obligation to pay a portion of future revenues to the Beeters under the terms of the Acquisition Agreement when it purchased the property in bankruptcy. This issue was not raised by the Beeters in support of their motion for summary judgment in the district court.

[¶ 20] This Court has repeatedly and consistently held that issues or contentions not raised or considered in the district court cannot be raised for the first time on appeal from a judgment or order, and this Court will not address issues raised for the first time on appeal. *See,*

*e.g., State ex rel. North Dakota Dep't of Labor v. Riemers*, 2008 ND 191, ¶ 27, 757 N.W.2d 50; *Christofferson v. North Dakota Dep't of Health*, 2007 ND 199, ¶ 16, 742 N.W.2d 799. As we noted in *Heng v. Rotech Med. Corp.*, 2006 ND 176, ¶ 9, 720 N.W.2d 54 (quoting *Chapman v. Chapman*, 2004 ND 22, ¶ 7, 673 N.W.2d 920):

> One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it. The purpose of an appeal is to review the actions of the trial court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories.

The requirement that a party "first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision." *State v. Smestad*, 2004 ND 140, ¶ 18, 681 N.W.2d 811 (quoting *Mahoney v. Mahoney*, 1997 ND 149, ¶ 13, 567 N.W.2d 206).

[¶ 21] Because the Beeters failed to raise this issue in their motion for summary judgment and the district court was not given an opportunity to rule on it, we will not address it on appeal.

V

[¶ 22] The judgment is reversed, and we remand for entry of summary judgment dismissing the Beeters' action against Sawyer.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.