# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1945
_____

Slawson Exploration Company, Inc.

*Plaintiff - Appellant*

v.

Nine Point Energy, LLC, formerly known as Triangle USA Petroleum Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 14, 2020
Filed: July 20, 2020

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Slawson Exploration Company, Inc. (Slawson) entered into an oil-and-gas exploration and production agreement with Triangle Petroleum Corporation (TPC) whereby TPC agreed, among other things, to pay an additional 10% of its share of the drilling, completing, and equipping costs for each well in which TPC elects to participate (Promote Obligation). TPC's successor-in-interest filed for bankruptcy,

and Slawson filed a proof of claim seeking payment, pursuant to the Promote Obligation, on all wells in which TPC's successor-in-interest elects to participate. The bankruptcy court confirmed the reorganization plan but, in light of Slawson's proof of claim, gave Slawson leave to commence litigation to determine whether the Promote Obligation runs with the land and is therefore not dischargeable in bankruptcy. TPC's successor-in-interest emerged from bankruptcy as Nine Point Energy, LLC (Nine Point). Thereafter, Slawson filed a declaratory action against Nine Point, alleging that the Promote Obligation is a covenant running with the land, a real property interest, or an equitable servitude under North Dakota law. The district court[1] determined that the Promote Obligation falls into none of these categories and granted summary judgment in favor of Nine Point. Slawson now appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

Slawson and Nine Point are oil-and-gas exploration and production companies. Slawson acquired certain leaseholds within an area known as Project X in North Dakota. Slawson sought partners to acquire additional leases in undeveloped lands in Project X and to evaluate, drill, and develop those lands. It executed an exploration and development agreement (EDA) with Nine Point's predecessor-in-interest, TPC. The EDA sets forth the terms under which Slawson and TPC agreed to develop leases in Project X. Specifically, the EDA establishes an area of mutual interest (AMI) within Project X, which requires that if either party acquires oil and gas leaseholds in the AMI during the AMI term, it must offer the other party an undivided interest at cost in the proportion specified in the EDA: 70% for Slawson and 30% for TPC. Accordingly, the EDA requires Slawson to offer TPC 30% interest in leases that it holds in the AMI, including those Slawson had already acquired, and TPC to offer Slawson 70% interest in any leases in the AMI it subsequently acquires. This obligation was subject to a

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

two-year period; all other terms of the EDA were to remain in force until the termination of the EDA.

The EDA also dictates how the parties develop the leaseholds, including how the parties share the costs for drilling and completing wells. Section 2(b) of the EDA provides: "As to each well drilled on leasehold acquired under the terms of this Agreement, in which [TPC] elects to participate, [TPC] shall pay its Participation Interest share of all costs . . . for the well plus an amount equal to 10 percent of [TPC's] share of such costs." Accordingly, under the EDA, if TPC elects to participate in the drilling of a well on a Project X leasehold, it is responsible for 30% of the costs of drilling, completing, and equipping as well as an additional 10% of its share of the costs. The 10% payment is known as the Promote Obligation.

On June 29, 2016, TPC's successor-in-interest, Triangle USA Petroleum Corporation (TUSA), filed for relief under Chapter 11 of the United States Bankruptcy Code. Slawson filed a proof of claim in TUSA's bankruptcy proceeding regarding the Promote Obligation payments for wells in which TUSA might elect to participate on or after June 29, 2016. Slawson asserted that the Promote Obligation is not dischargeable in bankruptcy because it is a covenant running with the land. The bankruptcy court confirmed TUSA's reorganization plan but expressly reserved Slawson's right to commence litigation to determine whether the Promote Obligation runs with the land. Thereafter, TUSA emerged from bankruptcy as Nine Point.

On May 24, 2017, Slawson filed a declaratory action against Nine Point, alleging that the Promote Obligation falls into at least one of the following property interest categories under North Dakota law: (1) a covenant running with the land; (2) an equitable servitude; or (3) a real property interest. The district court granted Nine Point's motion for summary judgment, holding that the Promote Obligation does not fall into any of these categories. This appeal follows.

II.

Slawson argues the district court erred in granting Nine Point's motion for summary judgment. "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." J.E. Jones Constr. Co. v. Chubb & Sons, Inc., 486 F.3d 337, 340 (8th Cir. 2007). "We review a district court's grant of summary judgment de novo, including its interpretation of state law." Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 875 (8th Cir. 2011). The parties agree that North Dakota law governs this diversity action.

A.

Slawson first argues the district court erroneously concluded that the Promote Obligation is not a covenant running with the land. Under North Dakota law, covenants running with the land are defined as those "contained in grants of estates in real property [and] are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they personally had entered into them." N.D. Cent. Code Ann. § 47-04-24. Further, "[a]ll covenants contained in a grant of an estate in real property, which are made for the direct benefit of the property or some part of it then in existence, run with the land." N.D. Cent. Code Ann. § 47-04-26. "Thus, if a covenant contained in a deed does not directly benefit the land as required by N.D.C.C. § 47-04-26, it is personal and is enforceable only between the original parties to the deed." Beeter v. Sawyer Disposal LLC, 771 N.W.2d 282, 286 (N.D. 2009).

The North Dakota Supreme Court has not articulated a per se rule regarding whether contractual obligations similar to the Promote Obligation are covenants running with the land. While the Tenth Circuit in Spring Creek Exploration & Production Co. v. Hess Bakken Investment, II, LLC, 887 F.3d 1003, 1028-29 (10th Cir.

-4-

2018), held that AMI covenants do not run with the land under North Dakota law,[2] it is unclear whether the Promote Obligation constitutes an AMI covenant since the Promote Obligation applies to wells on leaseholds that extend beyond the two-year AMI term. And while the parties agree that the Promote Obligation was part of the consideration promised by TPC under the EDA, the North Dakota Supreme Court has stated only that "[i]t is *generally* recognized that a covenant to pay for land in a particular way is a personal covenant and does not run with the land." Beeter, 771 N.W.2d at 286 (emphasis added) (holding that covenant "requiring payment of six percent of gross revenues from waste disposal operations d[id] not in any manner benefit the land" and "[wa]s a purely personal benefit to the [appellant] and appears, in fact, to be part of the consideration and payment for the land").

Accordingly, we consider whether the Promote Obligation meets the statutory requirements to constitute a covenant running with the land. Assuming without deciding that the Promote Obligation meets all other statutory requirements, we focus our analysis on whether it directly benefits the land. Slawson argues the Promote Obligation necessarily benefits the land by encouraging its development. Specifically, Slawson argues the Promote Obligation incentivizes development by  defraying the risk of drilling and tying payment directly to improvements to the land.

Even assuming that drilling constitutes a benefit to the land and the Promote Obligation incentivizes this activity by defraying the risk of drilling, this constitutes, at best, an indirect benefit to the land. For instance, Slawson concedes the EDA provides that Slawson would still be entitled to the Promote Obligation payment even in a scenario in which only Nine Point, and not Slawson, elects to participate in the

---

[2]In so holding, the Tenth Circuit relied on a North Dakota Supreme Court case in which the parties had stipulated that the AMI covenant is not a covenant running with the land. See Golden v. SM Energy Co., 826 N.W.2d 610, 615 (N.D. 2013). Because of the stipulation, the North Dakota Supreme Court did not in fact address whether an AMI covenant can run with the land.

drilling of a well acquired under the terms of the EDA. In other words, under this scenario, Nine Point would pay 10% of its share of the drilling costs to Slawson even though Slawson had elected not to participate in the drilling project and, as such, would not be required to pay for the drilling costs. Thus, the fact that Slawson's receipt of the Promote Obligation payment is not contingent on its participation in the drilling project demonstrates that the Promote Obligation is a "purely personal benefit" to Slawson and not a direct benefit to the land. Id.

Additionally, that the Promote Obligation becomes payable only after an agreement to drill does not alone demonstrate that the Promote Obligation is directly tied to improving the land. Slawson relies on only one North Dakota case, Wheeler v. Southport Seven Planned Unit Development, 821 N.W.2d 746, 755 (N.D. 2012), in which the North Dakota Supreme Court held that a covenant requiring a participant to pay fees to provide for snow removal and lawn care as well as maintain common areas runs with the land. However, unlike the covenant at issue in Wheeler, the Promote Obligation is not a promise to pay for the development or maintenance of property; it is a promise to pay Slawson an additional 10% of Nine Point's share of the drilling costs. Further, while in Wheeler the covenant expressly provided that the fees were to be used exclusively for the benefit of the property and for improvement and maintenance of the common areas, see id. at 754-55, the EDA does not restrict Slawson's use of the Promote Obligation payment in any way. Even though it is possible, and even likely, that Slawson would use the proceeds from the Promote Obligation payment to drill, in the absence of anything in the EDA specifying that the proceeds must be used to drill wells, there is no direct relationship under the EDA between the Promote Obligation and Slawson's participation in drilling projects.

Accordingly, the Promote Obligation does not directly benefit the land. Thus, the district court did not err in concluding the Promote Obligation is not a covenant running with the land.

B.

Next, Slawson argues the district court erroneously declined to enforce the Promote Obligation as an equitable servitude. Generally, an equitable servitude is "any acceptable agreement affecting land against a purchaser with notice of the agreement, whether or not the agreement runs with land, unless the agreement involved only remotely and indirectly relates to use of the benefited land by the purchasers." 20 Am. Jur. 2d <u>Covenants</u> § 45; <u>see also</u> Restatement (Third) of Property (Servitudes) § 1.4 (2000) (discussing how the distinction between equitable servitudes and real covenants is outdated). We have found no cases in which any North Dakota court has enforced an equitable servitude in a similar context. Indeed, we have found only three North Dakota cases involving equitable servitudes and those cases involve a statute recognizing that condominium declarations of restrictions are enforceable as equitable servitudes. <u>See, e.g.</u>, <u>First Int'l Bank & Trust v. Peterson</u>, 797 N.W.2d 316, 322-23 (N.D. 2011) (relying on N.D. Cent. Code Ann. § 47-04.1-04 to state that declarations of restrictions are enforceable as equitable servitudes).

While Slawson points to <u>Hager v. City of Devils Lake</u>, 773 N.W.2d 420, 435 (N.D. 2009), <u>Hager</u> involved an easement by estoppel, which has long been recognized by the North Dakota Supreme Court. While there may be similarities between easements by estoppel and equitable servitudes, they are distinct legal rights with different elements, and the Promote Obligation clearly does not satisfy the elements for an easement by estoppel. <u>Id.</u> at 435 ("A court can imply an easement created by estoppel when 1) the owner of the servient estate permitted another to use that land under circumstances in which it was reasonable to foresee that the user would substantially change position believing that the permission would not be revoked, 2) the user substantially changed position in reasonable reliance on that belief, and 3) injustice can be avoided only by establishment of a servitude." (internal quotation marks omitted)). That the North Dakota Supreme Court has enforced another type of

-7-

land use restriction in equity does not mean it would enforce an equitable servitude in this context.

Accordingly, we conclude the North Dakota courts have not recognized equitable servitudes outside of the limited context discussed above. Thus, the district court did not err in declining Slawson's invitation to enforce the Promote Obligation as an equitable servitude.

## C.

Finally, Slawson argues the district court erroneously concluded that the Promote Obligation is not a real property interest. Under North Dakota law, "[o]il and gas leases are interests in real property." Nantt v. Puckett Energy Co., 382 N.W.2d 655, 659 (N.D. 1986). As such, the working interest—the interest conveyed to the lessee under an oil and gas lease—and the royalty interest—the interest retained by the lessor—are both interests in real property. Kittleson v. Grynberg Petroleum Co., 876 N.W.2d 443, 450 (N.D. 2016). Overriding royalty interests are also interests in real property. ANR W. Coal Dev. Co. v. Basin Electric Power Coop., 276 F.3d 957, 965 (8th Cir. 2002) (citing GeoStar Corp. v. Parkway Petroleum, Inc., 495 N.W.2d 61, 67 (N.D. 1993)) ("Overriding-royalty holders have an interest that is a form of real property under North Dakota law."). Like other royalty interests, overriding royalty interests give the owner the right to a share of the oil and gas production. However, they are carved out of the working interest created by an oil and gas lease and thus the ownership interest arises from the lease, not from ownership of the subsurface minerals. SunBehm Gas, Inc. v. Equinor Energy, LP, No. 1:19-CV-94, 2020 WL 2025355, at *3 (D.N.D. Apr. 27, 2020) (citing Slawson v. N.D. Indus. Comm'n, 339 N.W.2d 772, 776 (N.D. 1983)). Slawson argues the Promote Obligation is akin to an overriding royalty interest in that it is carved out of the working interest but, instead of being paid when the oil and gas is produced, it is paid when the oil and gas well is drilled.

While Slawson asserts these are two sides of the same coin, we disagree. An "unaccured royalty . . . is an interest in real estate entitling the royalty owner to share in the production of the minerals." Corbett v. La Bere, 68 N.W.2d 211, 214 (N.D. 1955). And "it has usually been held that oil and gas rents and royalties are profits issuing out of the land." Finstrom v. First State Bank of Buxton, 525 N.W.2d 675, 677 (N.D. 1994) (quoting 58 C.J.S. Mines and Minerals § 213 (1948)). The Promote Obligation is an allocation of drilling costs. While drilling is a necessary step to profiting from the minerals, drilling costs are not themselves profits issuing out of the land. Further, Slawson has presented no evidence that the North Dakota Supreme Court would consider the Promote Obligation as akin to a royalty interest or any other real property interest. Thus, we conclude that Slawson is "simply trying to force this 'square peg' . . . covenant into 'round hole' theories . . . when the dispositive issue is whether it is a covenant which runs with the land." Beeter, 771 N.W.2d at 287 (finding covenant for perpetual payment of 6% of gross revenues generated by waste disposal is not an interest in real property).

Accordingly, the district court did not err in concluding the Promote Obligation is not an interest in real property.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____